UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| AMY L. SCHNEIDER and JANET E. BRENEMAN, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | CASE NO. 2:15-cv-00204-JMS-WGH |
| UNION HOSPITAL, INC., | ) ) ) | |
| Defendant | ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR 12(B)
PARTIAL DISMISSAL OF THE AMENDED COMPLAINT
AND CERTIFICATION OF STATE LAW QUESTION**

Defendant Union Hospital, Inc., by counsel, respectfully submits this Brief in Support of its partial Motion to Dismiss and Certification of State Law Question.

**I.    Introduction**

Despite being afforded the opportunity to amend their complaint, many of Plaintiffs' claims in the Amended Complaint contain the same deficiencies displayed in the original complaint.

Simply put, and as explained in more detail below, this Court lacks subject matter jurisdiction over Plaintiffs' FLSA minimum wage claims and, in addition, nearly all of Plaintiffs' claims are insufficiently plead and run afoul of *Iqbal* and *Twombly*. That is, the allegations in the Amended Complaint amount to nothing more than conclusory allegations and formulaic recitations of the elements of Plaintiffs' various causes of action. As a result, partial dismissal of the Amended Complaint is warranted under Rule 12(b)(1) and 12(b)(6).

But some progress has been made from a pleading perspective. Union Hospital concedes that certain components of Plaintiffs' FLSA <u>overtime</u> allegations pass muster under *Iqbal* and *Twombly*.

## II. Plaintiffs' Allegations[1]

Plaintiffs filed this action against Union Hospital on July 6, 2015. [Doc. 1, Complaint]. Plaintiffs subsequently filed an Amended Complaint effective on November 5, 2015, which contained allegations similar to the first Complaint [Doc. 31-1, Amended Complaint]. Schneider worked for the Hospital from approximately January 2008 until she voluntarily ended her employment on May 1, 2015. [*Id*. at ¶ 1]. Schneider was paid on an hourly basis and treated as a non-exempt employee. [*Id*.]. Schneider's hourly rate of pay ranged from $18.02 to $18.75. [*Id*. at ¶ 14]. Breneman, for her part, worked for the Hospital from approximately January 2006 to the fall of 2011, and again from approximately November 2012 until she voluntarily ended her employment on May 19, 2015. [*Id*. at ¶ 2]. Breneman was paid on an hourly basis and treated as a non-exempt employee. [*Id*.]. Breneman's hourly rate of pay ranged from $11.90 to $12.38. [*Id*. at ¶ 16].

Plaintiffs allege that for all of the Hospital's hourly-paid employees, the Hospital has been using an electronic (believed to be a Kronos system) time keeping system activated by each employee's use of a telephone in the employee's department. [*Id*. at ¶ 4]. Union Hospital does not, according to the Plaintiffs, pay its employees' wages and compensation based upon actual entries on its own time records. [*Id*. at ¶ 5].

Plaintiffs' Amended Complaint still contains a number of conclusory allegations. For example, Union Hospital has apparently "violated [Plaintiffs'] rights and the rights of all members of the Plaintiff Class to be properly paid minimum wages and overtime wages in a

---

[1] For purposes of this Motion, all well-pleaded *factual* allegations will be accepted as true.

manner required by the FLSA." [*Id*. at ¶ 39]. Also, "Union Hospital has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through Union Hospital's illegal time card rounding practices." [*Id*. at ¶ 21].

Plaintiffs use these conclusory allegations to support their FLSA claims (set forth in Section V(A) of the Amended Complaint), their state law bad faith Wage Payment Statute claims (Section V(B) of the Amended Complaint), and their state law breach of contract claims (Section V(C) of the Amended Complaint). But as explained in more detail below, this Court lacks subject matter jurisdiction over Plaintiffs' FLSA minimum wage claims and, in addition, nearly all of Plaintiffs' claims are ripe for dismissal because they amount to nothing more than conclusory allegations and formulaic recitations of the elements of Plaintiffs' various causes of action. As a result, Union Hospital now moves for partial dismissal of Plaintiffs' Amended Complaint.

### III.   FLSA Minimum Wage Claims

The FLSA minimum wage claims should be dismissed because the Court lacks subject matter jurisdiction over those claims. Moreover, and alternatively, Plaintiffs insufficiently pleaded factual allegations of FLSA minimum wage violations such that they have failed to state a claim upon which relief may be granted.

    **A.**   **This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' FLSA Minimum Wage Claims, Therefore Those Claims Should Be Dismissed Under FRCP 12(b)(1).**

Article III, § 2, of the Constitution limits the jurisdiction of the federal courts to actual "Cases" or "Controversies." The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) citing *Allen v. Wright*, 468 U.S. 737, 751 (1984). The Supreme Court has

stated that plaintiffs must have standing to warrant "invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) citing *Baker v. Carr*, 369 U.S. 186, 204 (1962). Plaintiffs lacking a personal stake or legally cognizable interest in the outcome of a claim lack standing to bring suit on that claim. *See Warth*, 422 U.S. at 499; *Lujan* 504 at 560. And, relatedly, a federal court lacks subject matter jurisdiction over a claim when a plaintiff lacks standing to bring suit on that claim. *Id*.

To establish standing to bring suit, plaintiffs must make a three-pronged showing of: (1) an "injury-in-fact" which is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct of which is complained; and (3) redressability—that is, the injury will likely, not simply speculatively, be redressed by a favorable decision. *United States v. Hays*, 515 U.S. 737, 743 (1995).

Important to this case, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) citing *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., dissenting); *also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962). Similarly, "it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987) (finding that the plaintiff had standing to assert "discipline and promotional

claims," but that he suffered no injury regarding the use of the "written entry-level examination" and thus lacked constitutional standing to assert such a "testing claim.").

In this case, there are no allegations in the Amended Complaint demonstrating that the named plaintiffs have minimum wage claims. In fact, Schneider's hourly rate of pay ranged from $18.02 to $18.75. [Doc. 31-1, ¶ 14]. Breneman's ranged from $11.90 to $12.38. [*Id.* at ¶ 16].

Nevertheless, Plaintiffs go on to allege that "some of their similarly situated coworkers were paid at the minimum wage rate of $7.25 per hour or a rate of pay very close to $7.25 per hour," and that "[w]hen these lower paid employees were subjected to time rounding that resulted in unpaid hours of work, those employees were paid at a rate that was less than minimum wage required by the FLSA." [*Id.* at ¶ 20] (emphasis added). Plaintiffs even go so far as to indicate that they "will need discovery to determine the number of weeks that FLSA opt-in Plaintiffs were subjected to illegal time rounding and paid at less than the FLSA-required minimum wage to estimate monetary damages." [*Id.*] (emphasis added). A plain reading of the this clear and unambiguous excerpt indicates that the named Plaintiffs do *not* have FLSA minimum wage claims.

Stated differently, Plaintiffs have simply pleaded themselves out of court with respect to their FLSA minimum wage claims. *See Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) (explaining that "[m]ore is not necessarily better under the Federal Rules; a party 'can plead himself out of court by unnecessarily alleging facts which . . . demonstrate that he has no legal claim.'").

Accordingly, the named plaintiffs lack standing with regard to their FLSA minimum wage claims. *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) citing *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., dissenting); *Warth*, 422 U.S. at 508; *Lujan*

504 at 578. It follows, respectfully, that this Court lacks subject matter jurisdiction over this particular claim and must dismiss under Rule 12(b)(1). *Id*.

> **B.      Additionally, and In the Alternative, Plaintiffs Fail to Plead Sufficient Factual Allegations Regarding Their FLSA Minimum Wage Claims Such That Those Claims Are Fatally Flawed and Still Ripe for Dismissal Under FRCP 12(b)(6).**
>
> **1.      12(b)(6) Standard**

In ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must "accept all well-pleaded factual allegations in the Complaint and draw all reasonable inferences from those facts in favor" of Plaintiffs, the non-moving party. *Richards v. Kiernan,* 461 F.3d 880, 882 (7th Cir. 2006). However, "[a] formulaic recitation of the elements of the cause of action is not enough to survive a motion to dismiss under Rule 12(b)(6)." *Logan v. Wilkins,* 2009 WL 2351718, at *1 (S.D. Ind. July 30, 2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Instead, Plaintiff "must 'raise a right to relief above the speculative level' by pleading 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (*quoting Twombly,* 550 U.S. at 555, 570). Additionally, legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations" to survive a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). Stated differently, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50 (internal quotations omitted).

> **2.      Dismissal is Warranted**

Under the FLSA, the term "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA's minimum wage provision requires that an employer pay wages to its employees at the rate of $7.25 per hour. *Id.* at § 206(a)(1)(C). Importantly, the FLSA "does not provide a federal remedy for any and all breaches of payment obligations under employment

contracts." *Braddock v. Madison County*, 34 F.Supp.2d 1098, 1112 (S.D. Ind. 1998). Instead, "[t]he core rights and obligations the FLSA creates are the minimum wage levels and entitlement to overtime pay for work above specified maximum hours set forth in 29 U.S.C. §§ 206 and 207." *Id*. Thus, the FLSA provides a private right of action to individuals "if their employer either fails to pay them an hourly rate equal to or greater than the…minimum wage…or fails to pay them overtime rates for hours worked in excess of forty per week. . . ." *See Hofmann v. Aspen Dental Management, Inc.*, No. 3:10-cv-37-SEB-WGH, 2011 WL 3902773 at *2 (S.D. Ind. Sept. 6, 2011).

Here, Plaintiffs claim in conclusory fashion that Union Hospital "violated [Plaintiffs'] rights and the rights of all members of the Plaintiff Class to be properly paid minimum wages…in a manner required by the FLSA." [Doc. 31-1, ¶ 39]. As explained above, such a conclusory statement is insufficient to state a claim for which relief may be granted, and therefore cannot survive a motion to dismiss under 12(b)(6). *Logan v. Wilkins*, 2009 WL 2351718, at *1 (S.D. Ind. July 30, 2009); *Twombly,* 550 U.S. at 555. Moreover, Plaintiffs' cryptic allegation that Union Hospital did not pay "Schneider, Breneman and members of the Plaintiff Class for all compensable work time and at the required minimum wage rate" still fails to meet this burden. [Doc. 31-1, ¶ 41]. *See Hofmann*, 2011 WL 3902773 at *3 ("if by alleging that [plaintiffs are] due compensation "for all hours worked," [they are] intending to allege that [they were] not paid minimum wage for the hours she worked, [their] allegations in support of that claim are insufficient to meet the requirements of Federal Rules of Civil Procedure 8(a) and 12(b)(6)."). Accordingly, this minimum wage claim is insufficiently plead.

Moving on, and to drive this point home, the well-pleaded factual allegations asserted in the Amended Complaint only permit the inference that the named plaintiffs were paid above the

minimum wage at all times. Accordingly, dismissal is warranted because "the factual allegations, seen in the light most favorable to the plaintiff[s], do not plausibly entitle the plaintiff[s] to relief." *Logan v. Wilkins*, 2009 WL 2351718, at *1 (S.D. Ind. July 30, 2009); *Twombly* 550 U.S. at 561-62. Again, Schneider's hourly rate of pay ranged from $18.02 to $18.75. [Doc. 31-1, ¶ 14]. Breneman's ranged from $11.90 to $12.38. [*Id.* at ¶ 16]. Thus, Plaintiffs have pleaded themselves out of court. *See Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Accordingly, Plaintiffs failed to sufficiently plead that Union Hospital violated the minimum wage provision of the FLSA (i.e. § 206 of the FLSA). *See Hofmann*, 2011 WL 3902773 at *3 (dismissing plaintiff's claims under § 206 where plaintiff alleged no facts allowing the court to "infer that she received less than minimum wage at any point during her employment.").

### IV. FLSA Willful Violation Allegations

#### A. There Are No Well-Pleaded Factual Allegations Supporting Plaintiffs' "Willful" FLSA Claims, Therefore Plaintiffs' Claim to Enhanced Relief Under The FLSA Should Be Dismissed Under FRCP 12(b)(6).

Just as Plaintiffs' minimum wage claims are deficient and fail to state a claim, so too are the claimed willful FLSA violations set forth in the Amended Complaint. For example, paragraph 21 of Plaintiffs' Amended Complaint accuses the Hospital of "intentionally [and] knowingly … violat[ing] its employees' rights to earned wages through Union Hospital's illegal time card rounding practices." [Doc. 31-1, ¶ 21]. Likewise, paragraph 42 concludes that the Hospital's "failure to comply with the FLSA's provisions regarding minimum wages and overtime…is willful…and subjects Union Hospital to a three year statute of limitations." [*Id*. at ¶ 42]. Again, this is exactly the type of legal conclusion couched as a factual allegation that is proscribed by *Iqbal*.

Indeed, the Supreme Court has stated that willfulness under the FLSA requires "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). In adopting this standard, the Supreme Court noted that the term "willful" is generally understood in the law "to refer to conduct that is not merely negligent." *Id.* The Court also observed that "[t]he fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *Id.* at 132-33; *see also Bass v. Potter*, 522 F.3d 1098, 1105 (10th Cir. 2008) (quoting *Hoffman v. Prof'l Med. Team*, 394 F.3d 414, 419-20 (6th Cir. 2005) for the proposition that "[c]ases under the ADEA and FLSA…have found willfulness most frequently in situations in which the employer deliberately chose to avoid researching the law's terms or affirmatively evaded them."); *Bankston v. State of Ill.*, 60 F.3d 1249 (7th Cir. 1995); *Felker v. Southwestern Emergency Medical Service, Inc.*, 581 F.Supp.2d 1006 (S.D. Ind. 2008). Unreasonableness is insufficient to suffice as proof of knowing or reckless disregard. *McLaughlin*, 486 U.S. at 135 n.13.

Ultimately, even assuming, for the sake of argument, that Plaintiffs plead viable FLSA claims—a contention that Union Hospital vehemently denies—Plaintiffs have failed to sufficiently plead *willful* violations of the FLSA.

    **V.**    **Indiana Wage Payment Statute**

        **A.**    **Plaintiffs Do Not Plead Sufficient Facts to Give Rise to a Bad Faith Indiana Wage Payment Claim, Therefore Plaintiffs' Claims for Treble Damage Relief Should Be Dismissed Under FRCP 12(b)(6).**

Similar to the arguments set forth above in Section IV of this Brief in Support, Plaintiffs have failed to plead sufficient facts giving rise to a bad faith statutory wage claim under Indiana's

9

Wage Payment Statute, I.C. § 22-2-5-2. Instead, Plaintiffs simply explain that, under the Wage Payment Statute, they are "seeking…payment of unpaid wages, underpaid wages, plus…*double the amount of wages due* [i.e., treble damages] as an additional monetary damage. . . ." [Doc. 31-1, ¶ 46] (emphasis added).

Important to note, however, is the fact that treble damages aren't automatically available under the Wage Payment Statute. In other words, *bad faith* must first be established in order for an employee to recover treble damages under I.C. § 22-2-5-2. Specifically, "if the court…determines that the [employer] that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages…that the employee be paid an amount equal to two (2) times the amount of wage due the employee." I.C. § 22-2-5-2.

Under Indiana law, poor judgment or negligence do not amount to bad faith. Instead, "the additional element of conscious wrongdoing must also be present. A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will. A bad faith determination inherently includes an element of culpability." *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 714 (Ind. Ct. App. 2007) *disapproved on other grounds by Kosarko v. Padula*, 979 N.E.2d 144 (Ind. 2012); *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998). Because Plaintiffs' Amended Complaint fails to assert well-plead factual allegations relating to the Hospital's dishonest purpose, moral obliquity, furtive design or ill will, dismissal of Plaintiffs' bad faith Indiana Wage Payment claim is warranted.

### B. Additionally, Union Hospital Requests Certification of This Controlling Issue to the Indiana Supreme Court.[2]

In the event that the Court finds that Plaintiffs have plead sufficient facts giving rise to a bad faith statutory wage claim, Union Hospital alternatively requests that, pursuant to Seventh Circuit Rule 52 and Indiana Rule of Appellate Procedure 64, the Court certify the question of which version of the Wage Payment Statute is to govern this case (i.e., the pre-July 1, 2015 Wage Payment Statute, or the post-July 1, 2015 amended Wage Payment Statute). This issue is appropriate for review by the Indiana Supreme Court given the positions taken by the parties and the controlling impact the answer will have on the direction and outcome of this case and other cases involving the Wage Payment Statute.[3] The standard for certification as well as additional justification for certification of this question is set forth below.

#### 1. Legal Framework

To begin with, Seventh Circuit Rule 52 provides that "[w]hen the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court … ." The state counterpart, Indiana Rule of Appellate Procedure 64, provides that "any federal district court may certify a question of Indiana law to the Supreme Court when it appears to the federal

---

[2] To the extent the Court permits certification of this question to the Indiana Supreme Court, Union Hospital requests that it be allowed to file a separate, supplemental brief to fully address the issue of the applicability of the amended Wage Payment Statute to the case at hand.

[3] The parties have asserted that different versions of the Wage Payment Statute apply and govern this case. Union Hospital asserts that the amended Wage Payment Statute governs, regardless of when any alleged violations occurred. Plaintiffs, however, claimed in their prior Response that the remedies under the amended Wage Payment Statute only apply to conduct occurring after July 1, 2015 (and likewise, that all pre-July 1, 2015 conduct is subject to the remedies available under pre-July 1, 2015 statute). [Doc. 32 at pp. 23, 25-27]. Also, the Wage Payment Statute provides the most potential relief available to the Plaintiffs because the Wage Payment Statute, unlike the FLSA, does not require proof of minimum wage or overtime violations, and Plaintiffs' interpretation would allow for treble damages for any violation of the Wage Payment Statute despite filing this case after the statute was amended. Additionally, if the new "bad faith" burden is imposed in order to recover treble damages, there will be significant briefing and argument on the issue of good faith and bad faith under the Wage Payment Statute.

11

court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent."

In this case, the question at issue is arising under state law, it will be determinative of the case, and there is no clear controlling Indiana precedent on the relief under the amended Wage Payment Statute. Accordingly, the prima facie requirements for certification are present.

More specifically, the Seventh Circuit has noted that "certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001), quoting *In re Badger Lines, Inc.*, 140 F.3d 691, 698–99 (7th Cir. 1998). The Court will also consider whether resolution will benefit other future litigants. *Pate*, 275 F.3d at 672. Of note, "[t]he most important consideration guiding the exercise of this discretion is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case." *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 415 (7th Cir. 2004) quoting *Pate*, 275 F.3d 666, 671 (7th Cir. 2001).

On the other hand, the Seventh Circuit has also pointed out that a question is not a good candidate for certification if the issue is fact-specific, there is not much uncertainty regarding the issue in dispute, or if the question presented lacks "broad, general significance." *Allstate Ins. Co.*, 285 F.3d 630, 639 (7th Cir. 2002); *Pate*, 275 F.3d 666, 672 (7th Cir. 2001); *LTV Steel Co., Inc. v. Northwest Engineering & Const., Inc.*, 41 F.3d 332 (7th Cir. 1994); *Woodbridge Place Apartments v. Washington Square Capital*, 965 F.2d 1429, 1434 (7th Cir.1992).

One example of a question that was certified by the Seventh Circuit comes from *In re Badger Lines*, a case that dealt with the priority of liens in bankruptcy. 140 F.3d 691. In that case, the Seventh Circuit certified a question to the Wisconsin Supreme Court regarding the requirement of perfection for judgment liens. *Id*. The Seventh Circuit determined that (1) the question was outcome-determinative in nature because the answer would determine the priority of the liens at issue and thereby the rights of the interested creditors,[4] (2) this particular issue was of vital public concern, (3) the issue recurred frequently, (4) the applicable law was unsettled, and (5) there were no Wisconsin cases on point. *Id*. at 698–99.

Cases in which the Seventh Circuit has declined to certify questions to state supreme courts share several common characteristics: (1) the questions are not outcome determinative, (2) the cases and issues are fact-specific, and (3) there is existing guidance from state appellate or supreme courts. *See Pate*, 275 F.3d at 673 (declining to certify a question to the Indiana Supreme Court because the Indiana Supreme Court previously had the opportunity to address the question but did not do so, because the Indiana Court of Appeals consistently took the same position on the issue, and because the Court was not uncertain about the content of Indiana law on the issue); *also LTV Steel Co., Inc.*, 41 F.3d 332 (7th Cir. 1994) (declining to certify LTV's question to the Indiana Supreme Court regarding a contract dispute because (1) the Seventh Circuit's analysis had been principally limited to the specific contract at issue, (2) the proposed question would not have been dispositive to the case, and (3) there was sufficient guidance from the Indiana Court of Appeals to decide the case.)*; also Brown*, 384 F.3d 413, 416-17 (7th Cir. 2004) (declining to certify a question because it would not have been outcome determinative, the intermediate courts were not in disagreement on the issue, and the request was for a case-specific question).

---

[4] Specifically, if perfection was required for judgement liens, then the trustee could avoid a transfer, but if not required, then the receiver held the prior, superior lien and could collect from the debtor's estate.

### 2. Certification is Warranted

Here, the issue in this case is more similar to the "binary" determination of priority in *In re Badger Lines* and this issue is likewise vital to a correct disposition of this case. The resolution of this question will determine the burden imposed on Plaintiffs to receive liquidated damages in the event of any Wage Payment Statute violations. This will impact the discovery, briefing, and the ultimate outcome of this case.

Moreover, and as an equitable consideration, it would be unfair for Union Hospital to undergo the rigors of litigation while in limbo as to the scope of its potential liability especially where, as here, there are no well-pleaded factual allegations (let alone facts) to suggest a bad faith violation of the Wage Payment Statute. In fact, given the July 1, 2015 amendment of the statute, it is possible that a case addressing this issue at the state court level will not be resolved until this litigation has concluded. As such, and because a determination by a state court will be authoritative on this matter, resolution of this question at the state court level is essential to the correct disposition of this case. *Kucharek v. Hanaway*, 902 F.2d 513, 517 (7th Cir. 1990) ("an important difference between interpretation of a state statute by a federal court and by a state court is that only the latter interpretation is authoritative").

Unlike the cases that declined to certify questions to the state supreme court, this is not a fact-specific inquiry. It is a question of statutory construction—specifically, whether the statue in effect at the time of the conduct controls, or whether the statute in effect at the time the suit was filed controls. Additionally, the elements required under *Pate* and *In re Badger Lines* are satisfied in this case—a matter of vital public concern, issue likely to recur, outcome determinative, and state supreme court has yet to issue a ruling.

## VI. Breach of Contract Claims

### A. Plaintiffs Do Not Plead Sufficient Facts to Give Rise to a Breach of Contract Claim, Therefore The Claim Should Be Dismissed Under FRCP (12)(b)(6).

And finally, Plaintiffs assert that the Hospital "breached its contractual promise to pay employees their wages" and that the alleged failures to pay wages "constitute class-wide breaches of contracts." [Doc. 31-1, ¶ 48]. These allegations fail to pass muster under *Iqbal*.

For starters, in order for a contract to exist under Indiana law, "there must be an offer and an acceptance of the offer which meets the terms of the offer in every respect." *Keating v. Burton*, 617 N.E.2d 588, 592 (Ind. Ct. App. 1993) (citations omitted). Similarly, for a completed oral contract to exist, "the parties must agree to all terms of the contract, regardless of whether they anticipated a written contract." *Id*.

And specifically in the employment context, a valid and enforceable employment contract in Indiana requires four terms: (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; and (4) the compensation the employee was to receive. *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 213 (7th Cir. 1996); *Majd Pour v. Basic American Medical, Inc.,* 512 N.E.2d 435, 439 (Ind. Ct. App. 1987).

In this case, Plaintiffs' "breach of contract" allegations are woefully deficient, in that they fail to assert factual allegations related to the key contract elements required under *Keating* and *Majd Pour*. Therefore, dismissal of the state law breach of contract claim is appropriate.

## VII. Conclusion

For the reasons set forth above, this Court lacks subject matter jurisdiction over Plaintiffs' FLSA minimum wage claims. Additionally, nearly all of Plaintiffs' various other claims are insufficiently plead and do not pass muster under *Iqbal* and *Twombly*, thereby warranting

dismissal. And finally, certification to the Indiana Supreme Court is warranted on the Plaintiffs' Indiana Wage Payment claim.

                Respectfully submitted,

         *s/ Nicholas S. Johnston*
         Stephen W. Lyman
         Dana E. Stutzman
         Nicholas S. Johnston
         HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
         Suite 2000, Box 82064
         One American Square
         Indianapolis, IN 46282
         (317) 633-4884
         (317) 633-4878 (FAX)
         E-mail: slyman@HallRender.com
                  dstutzman@HallRender.com
                  njohnston@HallRender.com

         ATTORNEYS FOR UNION HOSPITAL, INC.

CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2015, a copy of the foregoing *Defendant's Brief in Support of Partial Motion to Dismiss and Certify State Law Question* was filed electronically. Notice of this filing will be sent to the following party(ies) by operation of the Court's electronic filing system. The party(ies) may access this filing through the Court's system:

>Robert P. Kondras, Jr.
>Robert F. Hunt
>100 Cherry Street
>Terre Haute, IN 47807
>(812) 232-9691
>Facsimile: (812) 234-2881
>kondras@huntlawfirm.net
>hunt@huntlawfirm.net

>  s/ Nicholas S. Johnston
>Nicholas S. Johnston
>HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
>Suite 2000, Box 82064
>One American Square
>Indianapolis, IN 46282
>(317) 633-4884
>(317) 633-4878 (FAX)
>E-mail: njohnston@HallRender.com
>
>ATTORNEY FOR UNION HOSPITAL, INC.

2034490v.5

17