**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| AMY L. SCHNEIDER and | ) | |
| JANET E. BRENEMAN, individually | ) | |
| and on behalf of others similarly situated, | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiffs | ) | |
| | ) | **FLSA COLLECTIVE ACTION** |
| | ) | **COMPLAINT UNDER** |
| | ) | **29 USC § 216(b)** |
| | ) | |
| vs. | ) | CASE NO.  2:15-cv-00204-JMS-WGH |
| | ) | |
| UNION HOSPITAL, INC., | ) | |
| | ) | |
| Defendants | ) | |

***PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S "MOTION FOR 12(B)
PARTIAL DISMISSAL OF THE AMENDED COMPLAINT AND CERTIFICATION OF
STATE LAW QUESTION"***

Come now the Plaintiffs, Amy L. Schneider ("Schneider") and Janet E. Breneman

("Breneman"), individually and on behalf of others similarly situated, by counsel, and submit the

following as Plaintiffs' Response in Opposition to Defendant's December 3, 2015 Motion for

12(B) Partial Dismissal of the Amended Complaint and Certification of State Law Question

(Docket Entries 42 & 43):

## I.  INTRODUCTION

Plaintiffs' original July 6, 2015 Combined Class Action and FLSA Collective Action

Complaint for Damages (Docket Entry 1) and October 19, 2015 First Amended Combined Class

Action and FLSA Collective Action Complaint for Damages (See Docket Entries 30, 30-1 & 39)

have both been based entirely upon an unlawful and non-neutral time card rounding scheme used

1

by Defendant Union Hospital, Inc. ("Union Hospital") against its hourly-paid employees.  This time rounding results in the systematic underpayment of wages on a class-wide basis and causes wage violations under both the Indiana Wage Payment Statute and the Fair Labor Standards Act ("FLSA").  Union Hospital has no defense to Plaintiffs' wage claims.  Cumulatively, Union Hospital has systematically skimmed an extraordinary amount of wages from its hourly-paid employees over a number of years.

Initially, Union Hospital admitted to its one-sided time rounding scheme.  (Defendant's August 28, 2015 Answer, ¶ 9 - Docket Entry 20).  From that time forward, however, Union Hospital has employed a series of strategies (e.g., motions, refusal to provide discovery) that can only be interpreted as efforts to delay discovery, delay the certification of a FRCP 23(b)(3) class action and certification of a collective under Section 16(b) of the FLSA, and delay the resolution of this class/collective action wage lawsuit on its merits.  Union Hospital's December 3, 2015 partial motion to dismiss (Docket Entries 42 & 43) is one more in a series of these efforts to delay.[1]

Union Hospital's current partial motion to dismiss does not address the hospital's illegal time rounding scheme at all and it does not address the core liability issues under the Indiana Wage Payment Statute and the FLSA.  Instead, Union Hospital makes several factually and legally incorrect arguments about the FLSA minimum wage claims, about the FLSA and Indiana Wage Payment Statute liquidated damages, and about an alternate theory involving ordinary breach of contract claims under Indiana law.  Plaintiffs will address those arguments below, but

---

[1]As an example, Union Hospital is claiming its current partial motion to dismiss gives it the right to refuse to respond to initial interrogatories and a request for production of documents served upon it by Plaintiffs on November 5, 2015.

Plaintiffs request that the Court focus the parties' attention on important discovery, deadlines for a motion to certify the class/collective action, and a deadline for Plaintiffs to file a motion for partial summary judgment.  Union Hospital's money will be far better spent on wages owed to its own employees than on legal costs tied to time-wasting motions.

## II.  FACTS MATERIAL TO THE COURT'S RULING

### A.  Facts Alleged in Plaintiffs' Complaint

Plaintiffs object to Union Hospital's very brief, incorrect and very incomplete summary (Docket Entry 43, pp. 2-3) of Plaintiffs' allegations contained in their October 19, 2015 First Amended Complaint (Docket Entry 30-1).  For purposes of any FRCP 12(b)(1) or FRCP 12(b)(6) motion, all well-pleaded factual allegations are to be taken as true.  Plaintiffs' factual allegations were as follows (Docket Entry 30-1, pp. 2 - 10):

### "II.  FACTUAL ALLEGATIONS

1.      Schneider is a resident of the State of Indiana, and is domiciled in Terre Haute, Vigo County, Indiana.  Schneider was first hired by Union Hospital in approximately January 2008.  She continued her employment with Union Hospital through May 1, 2015, when she voluntarily ended her employment in order to take a similar position with a contracting company that performed work for Union Hospital.  At all times during her official employment with Union Hospital, Schneider was paid wages on an hourly basis and treated as a non-exempt employee.

2.      Breneman is a resident of the State of Indiana, and is domiciled in Terre Haute, Vigo County, Indiana.  Breneman was first hired by Union Hospital in approximately January 2006 and worked on a full time basis until the Fall 2011, when she retired for a period of time.  Breneman was hired again by Union Hospital in approximately November 2012 to work on an hourly paid basis and she continued her employment with Union Hospital through May 19, 2015, when she voluntarily resigned her employment.  At all times during her employment with Union Hospital, Breneman was paid wages on an hourly basis and treated as a non-exempt employee.

3.      Union Hospital employed Schneider and Breneman at its Terre Haute, Vigo County hospital.

4.      For all of its hourly-paid employees, Union Hospital used and uses an electronic (believed to be a Kronos system) time keeping system activated by each employee's use of a

3

specified telephone in his/her department.  Using this phone, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ends his/her work each shift.  If Union Hospital paid its non-exempt, hourly-paid employees' wages and overtime based upon these time clock entries, Union Hospital would be in compliance with the FLSA and with Indiana wage statutes.

      5.     Union Hospital does not pay its employees' wages and compensation based upon actual entries on its own time records.

      6.     Importantly, Union Hospital does not record its non-exempt, hourly-paid employees' work time in any other way.  The only time records Union Hospital has to base its payment of wages are the time records generated by the electronic, telephone-based system.

      7.     Union Hospital has created a policy and practice whereby it significantly adjusts downward and deducts time from its non-exempt, hourly-paid employees' time records and pays its employees for less than their full time worked.

      8.     Based upon its long-standing policy and practice of manipulating and downwardly adjusting employee time records, Union Hospital has been systematically underpaying its employees significant sums of wages on a daily basis.  The aggregate sum of unpaid wages for all employees based upon Union Hospital's non-neutral (and self-serving) rounding policy is very substantial on a daily, weekly, and an annual basis.

      9.     Union Hospital's time rounding system or program is designed to always benefit Union Hospital, both at the beginning of each employee's shift and at the end of each employee's shift.  Union Hospital pays it hourly employees for time worked in increments of one-tenth of one hour (0.10 hours).  When an employee clocks in at the beginning of a work shift, the employee's time punch is rounded **up** to the nearest one-tenth of an hour.  For example, if an employee is scheduled to begin work at 7:00 a.m., but clocks in at 6:55 a.m., the employee's time record is rounded **up** to treat the employee as though she clocked in at 7:00 a.m.  However, when an employee clocks out at the end of her work shift, that employee's time is rounded **down** to the nearest one-tenth of an hour.  As an example, if an employee is scheduled to finish work at 5:00 p.m., but actually clocks out at 5:05 p.m., that employee's time record is rounded **down** to treat the employee as though she clocked out at 5:00 p.m.

      10.    Systematically, Union Hospital rounds time off both ends of its employees' work shifts to benefit Union Hospital and to harm employees.  Union Hospital underpays wages to its employees by its use of this rounding system.  If employees were paid wages on a continuous work day basis - paid from actual time punch in to actual time punch out - employees would be paid more wages.  Moreover, even if Union Hospital utilized a neutral time rounding system - where it rounds up to the nearest one-tenth of an hour as often as it rounds time entries down to the nearest one-tenth of an hour - employees would be paid more wages.

11.     Additionally, Union Hospital has created published personnel and disciplinary policies that further ensure that Union Hospital's time rounding system will work to Union Hospital's advantage and its employees' detriment.  For example, Union Hospital created this policy:

> "Unless authorized to begin work early by a supervisor, no employee should begin work or clock in more than five (5) minutes before the start of the shift.  Similarly, unless authorized to work late by a supervisor no employee should continue working or clock out later than five (5) minutes after the end of the shift.  (Example: If shift is 7-3:30, the employee is expected to start work at 7 a.m. and complete the shift at 3:30 p.m.  Unless a supervisor authorizes otherwise, the employee should begin work and clock in between 6:55 a.m. and 7:00 a.m. and end work and clock out between 3:30 p.m. and 3:35 p.m."

Union Hospital also threatens discipline to any employee who reports to work even one minute late:

> "Employees are expected to be in their department and ready to work at the beginning of the shift.  (Example: an employee working 7 a.m. to 3:30 p.m. would be ready to work at 7 a.m.  7:01 is considered tardy."

Seven (7) such instances of "tardiness" in a rolling six (6) month period can result in suspension or termination of employment.  An employer also violates the Fair Labor Standards Act ("FLSA") if it creates a policy that allows time rounding when it benefits the employer, but results in discipline to the employee if rounding would not work to the employer's advantage.

12.     As described above, all of Union Hospital's time rounding practices were performed to Union Hospital's advantage and to the detriment and harm of Union Hospital's employees.  Union Hospital's time card rounding practices are not neutral.  Schneider and Breneman were actually harmed and underpaid wages based upon Union Hospital's implementation of its unlawful wage practices as described herein.

13.     To provide a more specific example of Union Hospital's illegal rounding of Schneider's time records, Schneider's January 9, 2015 time entries show unpaid time.  Schneider clocked in at 6:49 and clocked out at 15:47.  Her total elapsed time on the clock was 8 hours and 58 minutes.  Her records show that Schneider was paid for 8.8 hours for the day, or 8 hours and 48 minutes.  Schneider lost 10 minutes of paid work time.  Her shift start time was rounded from 6:49 **up** to the one-tenth of an hour mark that favored Union Hospital, 6:54, and her shift end time was rounded from 15:47 **down** to the one-tenth of an hour mark that favored Union Hospital, 15:42.

14.     During the period from July 6, 2012 through Schneider's last day of employment, Schneider worked at least 681 shifts.  On 30 of those shifts, Schneider clocked both in and out on precise one-tenth of an hour marks and she was paid for her actual recorded work time.  On the

remaining 651 shifts, Union Hospital rounded Schneider's time.  On all 651 occasions, Union Hospital rounded Schneider's time punches in Union Hospital's favor and to Schneider's detriment and paid Schneider for less time than she worked and reported on the time system.  On **zero** occasions, Union Hospital rounded Schneider's time in Schneider's favor.  For this period from July 6, 2012 to May 1, 2015, Union Hospital rounded and did not pay Schneider for at least 38.95 hours (2,337 minutes) of recorded work time.  Schneider's hourly rate of pay during this period ranged from  $18.02 to $18.75.  Calculated at her lowest hourly rate, $18.02, Schneider would be owed wages of at least $701.88.  Depending upon proof of overtime and the statute of limitations applied (2 or 3 year), Schneider's total damages, after liquidated damages are applied, could be $2,105.64 or more.

15.     To provide a specific example of Union Hospital's illegal rounding of Breneman's time records, records from February 15, 2015 show unpaid time.  Schneider clocked in at 5:55 and clocked out at 13:23.  Her total elapsed time on the clock was 7 hours and 28 minutes.  Her records show that Breneman was paid for 7.3 hours for the day, or 7 hours and 18 minutes.  Breneman lost 10 minutes of paid work time.  Her shift start time was rounded from 5:55 **up** to the one-tenth of an hour mark that favored Union Hospital, 6:00, and her shift end time was rounded from 13:23 **down** to the one-tenth of an hour mark that favored Union Hospital, 13:18.

16.     During the period from July 6, 2012 through Breneman's last day of employment, Breneman worked 333 shifts.  On 2 of those shifts, Breneman clocked both in and out on precise one-tenth of an hour marks and she was paid for her actual recorded work time.  On the remaining 331 shifts, Union Hospital rounded Breneman's time.  On all 331 occasions, Union Hospital rounded Breneman's time punches in Union Hospital's favor and to Breneman's detriment and paid Breneman for less time than she worked and reported on the time system.  On **zero** occasions, Union Hospital rounded Breneman's time in Breneman's favor.  For this period from July 6, 2012 to April 26, 2015, Union Hospital rounded and did not pay Schneider for at least 33.65 hours (2,019 minutes) of recorded work time.  Breneman's hourly rate of pay during this period ranged from  $11.90 to $12.38, and her average hourly rate was $12.15.  Calculated at her average hourly rate, $12.15, Breneman would be owed wages of at least $408.85.  Depending upon proof of overtime and the statute of limitations applied (2 or 3 year), Breneman's total damages, after liquidated damages are applied, could be $1,226.54 or more.

17.     As an FLSA unpaid overtime example, during calendar year 2015, Schneider's records show that she worked hours in excess of forty (40) and suffered unpaid wages due to rounding during at least the following work weeks (using first day of week and showing number of unpaid minutes due to rounding): 1/4/15 (18), 1/11/15 (17), 1/18/15 (5), 2/1/15 (9), 2/15/15 (10), 3/1/15(12), 4/19/15 (9), 4/26/15(10).  Schneider was not paid at least 1.5 hours (90 minutes) of earned and recorded overtime.  Her overtime rate of pay was at least $27.60.  For just that small period of time, Schneider's 2015 overtime damages would be at least $82.80 [1.5 hours x $27.60 x 2 (FLSA liquidated damages)].

6

18.     Based upon information and belief, Plaintiffs conservatively estimate that Union Hospital applied its unlawful time card rounding, as described herein, to the time records of 1,500 or more hourly paid Union Hospital employees.  Plaintiffs estimate that Union Hospital has rounded its employees' time records in its own favor to such a degree that Union Hospital failed to pay its employees for tens of thousands of hours of work that were reported to Union Hospital in its time records during the period of time relevant to this lawsuit.  Plaintiffs estimate that Union Hospital will owe a class-wide, cumulative total of at least several million dollars in damages under the Indiana Wage Payment Statute based upon its systematic underpayment of wages caused by this illegal time rounding.

19.     With respect to the collective action claims for unpaid overtime under the FLSA, based upon information and belief, Plaintiffs conservatively estimate that Union Hospital applied its unlawful time card rounding, as described herein, to the time records of its employees during weeks in which those employees also worked hours in excess of forty (40), causing unpaid overtime violations.  Schneider and many of her similarly situated Union Hospital coworkers worked in excess of forty (40) hours during one or more calendar week in which they also were subjected to illegal time card rounding and not paid all of their overtime compensation.  Plaintiffs will need discovery to determine the number of weeks that FLSA opt-in Plaintiffs worked overtime hours and were subjected to illegal time rounding to estimate monetary damages.

20.     With respect to the collective action claims for unpaid minimum wages under the FLSA, based upon information and belief, Plaintiffs assert and allege that some of their similarly situated coworkers were paid at the minimum wage rate of $7.25 per hour or a rate of pay very close to $7.25 per hour.  Those lower paid employees were subjected to the same time rounding scheme described herein.  When these lower paid employees were subjected to time rounding that resulted in unpaid hours of work, those employees were paid at a rate that was less than the minimum wage required by the FLSA.  Plaintiffs will need discovery to determine the number of weeks that FLSA opt-in Plaintiffs were subjected to illegal time rounding and paid at less than the FLSA-required minimum wage to estimate monetary damages.

21.     Union Hospital has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through Union Hospital's illegal time card rounding practices.  Union Hospital has intentionally, knowingly, with reckless disregard and systematically violated Schneider, Breneman and all similarly situated employees' rights to be paid earned wages and to be paid earned overtime compensation and minimum wages.  Union Hospital deliberately and intentionally implemented a time card rounding system in order to pay less in wages to its employees than it owed and less than was reported and earned by the employees.

22.     In Schneider and Breneman's cases, as has been true in the cases of many current and former Union Hospital employees, Union Hospital has failed and refused to make a payment of all accrued wages, particularly underpaid wages resulting from Union Hospital's illegal and non-neutral time record rounding policies, and more than 20 days have passed since the last date

7

Union Hospital could have made payment of these wages without penalty under Indiana Law."

### III.  LEGAL ARGUMENT

#### A.  Legal Standards

##### 1.  FRCP 12(b)(1) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor.  *See Transit Exp., Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001).  "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999).  The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.  *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).  See also *Mason v. Gates Auto. Holdings, Inc.*, 2015 WL 134236 at *1 (S.D. Ind. Jan. 9, 2015)*.*

##### 2.  FRCP 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted." In order to survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *EEOC v. Concentra Health Servs.,* 496 F.3d 773, 776 (7th Cir.2007). The language of Rule 12(b)(6) "impose[s] two easy-to-clear hurdles.  First, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief,

raising that possibility above a 'speculative level; if they do not, plaintiff pleads itself out of court." *Id.* (citations omitted). In considering whether the plaintiff has in fact cleared these hurdles, the Court draws all reasonable inferences in the plaintiff's favor and accepts as true all well-pled factual allegations. *Tomayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008); *Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir.2006).

### B.  FLSA Arguments

Plaintiffs have filed one FLSA claim based upon Union Hospital's illegal time rounding system.  It is not illegal *per se* for an employer to round time clock entries.  The FLSA regulations state that rounding time clock entries to the nearest one-tenth or quarter of an hour is acceptable for enforcement purposes "provided that it ...will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked. *Binissa v. ABM Industries*, *Inc.*, 2014 WL 793111 *4 (N.D. Ill., Feb. 26, 2014), citing 29 CFR § 785.48(b).  It is, however, absolutely illegal and a violation of the FLSA when an employer rounds time clock entries in a way that always benefits the employer and harms the employee. *Chao v. Self Pride, Inc.,* 2005 WL 1400740 **6-7 (D.Md. June 14, 2005) (Plaintiffs granted summary judgment when employer only rounded in its own favor).  Neutral time clock rounding practices - rounding both up and down in a way that averages out over time - are legal.  29 CFR § 785.48(b)  Non-neutral rounding practices that only benefit the employer and result in the underpayment of wages to the employees are always illegal.  *Id.*

Union Hospital has deliberately implemented a time rounding policy that always favors Union Hospital and always works to the detriment of its employees.  This rounding down results in Union Hospital's payment of lower wages than Union Hospital should pay based upon

recorded time worked.  In such non-neutral rounding lawsuits, plaintiffs win.  See *Brown v. L & P Indus., LLC,* 2005 WL 3503637 **5-6 (E.D.Ark. Dec.21, 2005) (no formula used and owner rounded time inconsistently based on personal knowledge of each employee); *Chao v. Self Pride, Inc.,* 2005 WL 1400740 at **6-7 (employer only rounded down); *Hodgson v. Leeco Gas & Oil Co.*, 1972 WL 958 *3 (M.D. Fla. Oct. 2, 1972) (employer liable because rounding practice did not properly compensate employees for all recorded hours of work).

For purposes of proving Union Hospital's liability, every class member is a common victim of Union Hospital's illegal time rounding scheme.  For purpose of assessing damages under the FLSA, the class members can be divided into four (4) categories of potential damages:

1.  **Unpaid overtime compensation**.  This category includes all class members, like Schneider, who were subjected to illegal time rounding and were paid less than their full earned wages in weeks in which each class member also worked more than forty (40) hours.

2.  **Unpaid minimum wages**.  This category includes any class members who were subjected to illegal time rounding and who were paid less than an average hourly rate of pay equal to the applicable minimum wage ($7.25 per hour).  This category is likely to apply only to class members who were already being paid at a low hourly rate of pay (less than $8.00 per hour).

3.  **Unpaid overtime compensation <u>and</u> unpaid minimum wages**.  This category includes all class members who were subjected to illegal time rounding and who were paid less than an average hourly rate of pay equal to the applicable minimum wage ($7.25 per hour) and who were also paid less than their full earned wages in a week in which each class member worked more than forty (40) hours.  This category is likely to apply only to class members who were already being paid at a low hourly rate of pay, but were working full-time (forty or more per week) hours.

4.  **Gap time wages**.  This category includes all weeks in which any class member was subjected to Union Hospital's illegal time rounding and was underpaid earned wages, but the class member did not work overtime hours (more than forty in a week) and the class member was also paid at an average hourly rate for the week that was greater than the applicable minimum wage ($7.25 per hour).  Luckily, these class members whose wage claims fall in this "gap" will be able to recover

10

unpaid wages under the Indiana Wage Payment Statute theory or, at least, under an Indiana law breach of contract theory.

Plaintiffs have not made separate FLSA overtime claims which are distinct from FLSA minimum wage claims. Plaintiffs have made a single FLSA claim based upon Union Hospital's class-wide time rounding practices which violate the FLSA and result in unpaid wages. The fact that this time rounding creates both overtime and minimum wage damages has nothing to do with Union Hospital's obvious liability for the FLSA violation or with the Court's ability to certify the claim as a collective action under 29 USC § 216(b). Union Hospital's partial motion to dismiss what it calls Plaintiffs' FLSA minimum wage claim is simply one in a series of Union Hospital's attempts to delay this litigation and add to the expense.

Finally, at this stage of the litigation, neither side knows the extent Union Hospital's FLSA violations caused by its illegal time rounding will actually result in FLSA minimum wage damages (as compared to the likely far greater FLSA overtime damages). As mentioned above, the only employees likely to suffer a wage that was less than minimum wage - $7.25 per hour - are those who were only being paid $7.25 per hour or close to it. If, after the FLSA opt-in period closes and after discovery is exchanged, no opt-in plaintiffs were paid at hourly rates that were at or close to $7.25 per hour, then all of the FLSA time rounding damages will be overtime damages and not minimum wage damages. That said, Plaintiffs are seeking to protect the rights and interests of all victims of Union Hospital's time rounding violations. The fact that those Union Hospital employees who are paid the least and those with only FLSA minimum wage damages may be fewer in number or have far less at stake in terms of total dollars is not a reason to exclude those individuals from the FLSA collective action. Indeed, the money recovered may

mean more to those who were only being paid minimum wages.

### 1. The Court Certainly Has Subject Matter Jurisdiction Over Plaintiffs' FLSA Claims

The FLSA is a federal law.  Obviously, the Court has subject matter jurisdiction over Plaintiffs' FLSA claim under 28 USC § 1331, because Plaintiffs have raised a federal question of law.  Moreover, Plaintiffs' FLSA claim, Indiana Wage Payment Statute claim and breach of contract claim are all based upon a common set of facts tied to Union Hospital's illegal time rounding and underpayment of wages.  The Court has supplemental jurisdiction over Plaintiffs' related Indiana law claims under 28 USC § 1367(a).

Union Hospital's FRCP 12(b)(1) motion purports to focus upon the Plaintiffs' standing to bring FLSA claims, but it makes no challenge to the Plaintiffs' collective action claim itself which focuses upon Union Hospital's class-wide violations of the FLSA's rules against non-neutral time card rounding.  Union Hospital does not challenge Plaintiffs' standing to pursue claims under the FLSA for the overtime damages its illegal time rounding causes.  (Docket Entry 43, p. 2).  Instead, Union Hospital argues that neither Schneider nor Breneman allege specific-enough facts that one of them suffered damage from Union Hospital's illegal time rounding that resulted in payment of a wage that was less than the FLSA's minimum wage.  As described above, Plaintiffs have not alleged separate FLSA overtime and FLSA minimum wage claims. Plaintiffs are pursuing collective action claims under the FLSA based upon Union Hospital's illegal time rounding scheme which resulted in unpaid wages.  Some of the unpaid wages were unpaid overtime wages.  Some were unpaid minimum wages.

Union Hospital's argument suffers from a fundamental misunderstanding of the FLSA's collective action mechanism.  29 USC § 216(b) provides, in pertinent part:

"An action to recover the liability prescribed [for violations of the minimum wage, maximum hours, and anti-discrimination provisions of the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

*White v. Classic Dining Acquisition Corp.*, 2012 WL 1252589 *2 (S.D. Ind. Apr. 13, 2012).  As

will be explained in more detail below, Schneider[2] has to be "similarly situated" - not "identically

situated" - to other Union Hospital employees subjected to the same illegal time rounding

scheme.  In an FLSA collective action, the Seventh Circuit has "determined that certification may

be appropriate despite individualized questions and circumstances, if common questions

predominate." *Russell v. Illinois Bell Tel. Co.*, 721 F.Supp.2d 804, 812 (N.D. Ill. 2010), citing

*Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010) ("if common questions

predominate, the plaintiffs may be similarly situated even though the recovery of any given

plaintiff may be determined by only a subset of those common questions.")  Differences in class

member damages do not defeat certification of an FLSA collective action, much less a lead

plaintiff's standing when challenged in a FRCP 12(b)(1) motion.  See *Smith v. Family Video

Movie Club, Inc.*, 2015 WL 1542649 **8-9 (N.D. Ill. Mar. 31, 2015) (an FLSA collective action

claim), citing *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive

---

[2]For purposes of Plaintiffs' FLSA claims, Schneider will serve as the representative plaintiff. Now that Plaintiffs have seen their own time records and pay roll records, Schneider can prove that she was not paid overtime wages in many calendar weeks as a result of Union Hospital's illegal time rounding.  Breneman was subjected to the same time rounding, but it appears very possible that Breneman's unpaid wages cannot be characterized as either sub-minimum wages or unpaid overtime wages.  Breneman may have damages that fall in an FLSA category many courts call "gap time." *Jones v. C&D Technologies, Inc*., 8 F.Supp.3d 1054, 1069-1070 (S.D. Ind. 2014).  Both Breneman and Schneider will serve as FRCP 23 class representatives for their claims under the Indiana Wage Payment Statute.

a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages.")

For purposes of an FLSA case and a lead plaintiff's standing to pursue FLSA claims, Union Hospital has not and will not find a single case that states that the lead plaintiff must assert her own individual damages consist of <u>both</u> overtime damages and minimum wage damages in order to serve as the representative plaintiff in an FLSA collective action that is formed based upon a common FLSA violation or common theory.  "Individualized damage issues and the need for individualized testimony and cross examination related to the FLSA Plaintiffs will not render the class unmanageable or undermine the objectives of proceeding collectively." *Cottle v. Falcon Holdings Mgmt*., LLC, 892 F.Supp.2d 1053, 1069-1070 (N.D. Ind. 2012).  Schneider has standing because she was a victim, just like every other class member, of Union Hospital's illegal time rounding scheme which resulted in unpaid wages.  The common FLSA violation is the time rounding.  The fact that some victims have only overtime damages, while some have only minimum wage damages, and a third group may have both overtime and minimum wage damages is inconsequential and does nothing to defeat the collective nature of the lawsuit.

It is also important to note that none of the cases Union Hospital cites (Docket Entry 43, pp. 3-6) have anything to do with FLSA claims or, more particularly, FLSA collective actions brought under 29 USC § 216(b).  There is no precedent for Union Hospital's argument that the lead plaintiff in a viable FLSA collective action must plead that she has suffered both overtime damages <u>and</u> minimum wage damages as a result of the employer's class-wide FLSA violation which is the basis for the collective action.

14

### 2. Plaintiffs' FLSA Collective Action Claims Based Upon Illegal Time Rounding Properly Include a Recovery of Unpaid Minimum Wages

Union Hospital's FRCP 12(b)(6) motion fares no better than its FRCP 12(b)(1) motion. The one FLSA minimum wage case[3] Union Hospital relies upon - *Hofmann v. Aspen Dental Management, Inc.*, 2011 WL 3902773 (S.D. Ind. Sept. 6, 2011) - is an individual FLSA case, not a collective action.  In its motion, Union Hospital makes no argument that Schneider fails to plead or to adequately describe her FLSA claim based upon Union Hospital's illegal time rounding scheme.  Union Hospital does not argue that Schneider has failed to describe the manner in which she was harmed as a victim of Union Hospital's illegal time rounding scheme. Moreover, Union Hospital does not argue that Schneider has failed to detail or describe the basis for her FLSA collective action - the fact that Union Hospital subjected all of its hourly-paid employees to the same illegal time rounding scheme.  Instead, Union Hospital argues that Schneider should have alleged that her damages flowing from Union Hospital's class-wide illegal time rounding violations consisted of both FLSA overtime damages (which Union Hospital concedes Schneider has on page 2 of its brief) and minimum wage violations.  (Docket Entry 43, pp. 6-8)

For purposes of pleading a viable FLSA collective action, a number of federal courts have described a FRCP 12(b)(6) standard specific to collective actions.  See, e.g., *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F.Supp.2d 139, 151-153 (D. Mass 2013) (denying motion to dismiss collective action allegations prior to certification even when court had doubts about proposed scope of collective action); *Lang v. DirecTV, Inc.*, 735 F.Supp.2d 421, 435-436 (E.D.

---

[3]Union Hospital mentions *Braddock v. Madison County*, 34 F.Supp.2d 1098 (S.D. Ind. 2012) for a different purpose, but that case is not an FLSA collective action either.

La. 2010) (denying motion to dismiss collective action claims before motion for conditional

certification); *Myers v. MedQuist, Inc*., 2006 WL 3751210 **4-5 (D.N.J. Dec. 20, 2006)

(premature to consider motion to dismiss collective action allegations prior to conditional

certification stage). In support of the FLSA collective action, Plaintiffs have appropriately

alleged a factual basis showing there are similarly situated persons entitled to relief under 29

USC § 216(b) and/or that common issues of fact predominate sufficiently to satisfy the

traditional FRCP 12(b)(6) standard. *Cavallaro*, 971 F.Supp.2d at 152.

Essentially, Union Hospital is conceding that Plaintiffs, through Schneider, have

established an FLSA collective action claim for illegal time rounding and sufficiently alleged

FLSA damages (because Schneider went so far as to describe amounts and weeks in which she

was not paid overtime). Union Hospital is arguing that employees who have minimum wage

damages in this collective action should have their claims dismissed because the Plaintiffs and

Plaintiffs' attorneys do not know a specific name of a minimum wage victim and cannot allege a

specific week in which a minimum wage violation occurred. FRCP 12(b)(6) imposes no such

requirement. Instead, Plaintiffs need only allege that putative opt-in plaintiffs "were subject to a

uniform policy that violated the FLSA." *Cavallaro*, 971 F.Supp.2d at 152, citing *Lang*, 735

F.Supp.2d at 436. Also, Plaintiffs actually provided a specific explanation of the manner in

which Union Hospital's illegal time rounding will cause minimum wage violations against Union

Hospital's low paid workers (earning $7.25 per hour or close to that rate) in Paragraph 20 of the

October 19, 2015 Amended Complaint:

> "20.    With respect to the collective action claims for unpaid minimum wages under the
> FLSA, based upon information and belief, Plaintiffs assert and allege that some of their
> similarly situated coworkers were paid at the minimum wage rate of $7.25 per hour or a

16

rate of pay very close to $7.25 per hour.  Those lower paid employees were subjected to the same time rounding scheme described herein.  When these lower paid employees were subjected to time rounding that resulted in unpaid hours of work, those employees were paid at a rate that was less than the minimum wage required by the FLSA.  Plaintiffs will need discovery to determine the number of weeks that FLSA opt-in Plaintiffs were subjected to illegal time rounding and paid at less than the FLSA-required minimum wage to estimate monetary damages."

(Docket Entry 30-1, ¶ 20)

More importantly, the collective action will work at the conditional certification stage. The only difference Union Hospital argues is a difference in damages between Schneider and those putative opt-in plaintiffs who may have been paid less than a minimum wage when their time was rounded and their full wages were not paid.  As stated above, the FLSA caselaw is very clear that a mere difference in class member damages is no impediment to the certification of an FLSA collective action.  *Barry v. United States*, 117 Fed.Cl. 518, 521 (2014) (individualized damage determinations cannot defeat certification of collective action); *Gomez v. Tyson Foods, Inc.*, 295 F.R.D. 397, 402 (D. Neb. 2013) (same); *Thompson v. Bruister & Assocs.*, 967 F.Supp.2d 1204, 1217-1218 (M.D. Tenn. 2013) (same); *Espinoza v. 953 Assocs., LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (common questions about liability warranted certification even though differences in damages owed to employees existed).  See also  *Smith v. Family Video Movie Club, Inc*., 2015 WL 1542649 at **8-9, quoting *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting the remedial nature of the FLSA and that Congress intended Section 16(b) to give plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources); *Kurgan v. Chiro One Wellness Centers LLC*, 2014 WL 642092 **8-9 (N.D. Ill. Feb. 19, 2014) (different damages can flow from a common wrong or common violation); *Driver v. AppleIllinois, LLC*, 2012 WL 689169 **2-3 (N.D. Ill. 2012) (individualized

17

issues regarding the way in which the practice affected each class member did not preclude class certification); *Wilkins v. Just Energy Grp., Inc*., 308 F.R.D. 170, 189 (N.D. Ill. 2015) ("if the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification"); *Reab v. Elec. Arts, Inc*. 214 F.R.D. 623, 628-629 (D. Colo. 2002) ("individual questions with respect to damages will not defeat class certification").

Union Hospital's motion is frustrating because, in reality, the minimum wage damages at stake in this lawsuit will likely represent a very small part of the overall damages.  It is likely that Union Hospital employed some hourly-paid workers during the relevant time period and paid those workers at the $7.25 per hour minimum wage rate or an amount very close to minimum wage.  If those employees already paid at a minimum wage level lost paid work time to Union Hospital's illegal time rounding scheme, they would have been paid an average of less than minimum wage during weeks in which they had unpaid (rounded) wages.  That said, Schneider and Breneman were victims of the same time rounding policy and practice.  Again, the only differences in the application of Union Hospital's uniform and singular rounding policy could be 1) did the rounding cause overtime violations?; 2) did the rounding cause minimum wage violations?; and 3) how much is the person owed in damages?  Stated differently, the fact that Union Hospital's illegal time rounding cause overtime damages to some victims and minimum wage damages to other victims is unimportant to questions of certification or Schneider's ability to represent similarly situated victims in this collective action.  Plaintiffs more than adequately alleged and provided notice to Union Hospital that its time rounding scheme caused FLSA

minimum wage violations to some Plaintiff Class Members.  (Complaint, ¶¶ 4- 22, 39, 41)

Finally, for the sake of taking the argument to an absurd conclusion, what if Union Hospital were correct and the minimum wage component of the FLSA illegal time rounding case can only proceed if one of the lead plaintiffs suffers actual minimum wage damages (in addition to suffering overtime damages from the same time rounding violation)?  This case is proceeding as a combined FLSA collective action and Indiana Wage Payment Statute class action.  What if some of the Rule 23 class members' records show - as expected - that some lower-paid class members suffered actual FLSA minimum wage losses?  Should a second, duplicate lawsuit be filed just so that Union Hospital can win a theoretical argument?  Such a duplicated effort would defeat the economic efficiencies intended by FLSA collective actions.  Instead, the Court, Plaintiffs and Union Hospital should wait to see which employee-victims of Union Hospital's illegal time rounding actually opt-in to the FLSA collective action portion of the lawsuit and records can be reviewed to see if any of the opt-ins were paid so little that a minimum wage violation occurred (as opposed to only FLSA overtime violations).

### 3.  *Willfulness Arguments*

Union Hospital argues that Plaintiffs' complaint does not plead facts that would allow the Court to find Union Hospital's FLSA violations to be "willful" in a way that permits application of the FLSA's three (3) year statute of limitations.  It moves to dismiss the claims for willful FLSA violations under FRCP 12(b)(6).  (Docket Entry 43, pp. 8-9).  It is clear from Union Hospital's argument that none of its representatives 1) read the Plaintiffs' Complaint, and 2) no one researched the elements necessary to establish a "willful violation" of the FLSA that would permit the application of a three (3) year statute of limitations.

19

Plaintiffs' facts that establish Union Hospital's willful and intentional, class-wide violations of its employees' rights under the FLSA are set forth in Paragraphs 1 - 34 (Docket Entry 30-1, ¶¶ 1 - 34), but Paragraph 21 should particularly be highlighted:

> "21.     Union Hospital has intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through Union Hospital's illegal time card rounding practices.  Union Hospital has intentionally, knowingly, with reckless disregard and systematically violated Schneider, Breneman and all similarly situated employees' rights to be paid earned wages and to be paid earned overtime compensation and minimum wages.  ***Union Hospital deliberately and intentionally implemented a time card rounding system in order to pay less in wages to its employees than it owed and less than was reported and earned by the employees***."

(Docket Entry 30-1, ¶ 21 - emphasis added).

Proof (much less a mere allegation in a complaint) of FLSA "willfulness" does not require any showing of malice or bad faith.  Indeed, FLSA willfulness can be shown with as little as an employer's "reckless disregard" of its employees' rights under the FLSA.  Here, the Plaintiffs have very definitely alleged facts that go far beyond reckless disregard - "Union Hospital <u>deliberately</u> and intentionally <u>implemented</u> a time card rounding <u>system</u> in order <u>to pay less in wages</u> to its employees than it <u>owed and less than was reported and earned by the employees</u>."  The Plaintiffs have alleged, and the Plaintiffs will prove that Union Hospital intentionally and deliberately created a system (through programming of its computerized time keeping system and corresponding pay roll system) with the express intent to skim wages from its employees.  How could such a deliberate choice and deliberate implementation of such a system not be, at the very least, "willful?"  Indeed, how is Union Hospital's deliberately-created time rounding system different from a company bookkeeper who skims small sums of money from the company over a long period of time?  No one would question that the bookkeeper in

that example was "willfully" embezzling from an employer.  How can Union Hospital argue it is much different in its wage skimming scheme which was designed to skim small sums of wages from a large group of employees over a long period of time?

The FLSA provides for a two-year statute of limitations. 29 U.S.C. § 255(a). This period may be extended to three years for "a cause of action arising out of a willful violation." *Id.* Plaintiffs bear the burden of proof on this issue.  *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986)  "An employer acts willfully, for purposes of establishing the proper statute of limitations, where he knows or shows reckless disregard for whether his actions are unlawful under the FLSA." *Bankston v. State of Ill.,* 60 F.3d 1249, 1254 (7th Cir.1995); *see also Felker v. Sw. Emergency Med. Sev., Inc.,* 581 F.Supp.2d 1006, 1012 (S.D.Ind.2008). The regulations define "reckless disregard" as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.  Accordingly, the "three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA; rather it may apply when it simply disregarded the possibility that it might be violating the FLSA." *Allen v. Bd. of Pub. Ed.,* 495 F.3d 1306, 1324 (11th Cir.2007); *Schnepf v. Brothers Auto Salvage Yard, Inc.*, 2012 WL 442331, *5 (S.D.Ind.) (Judge Young applied a three year statute of limitations because the employer failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA.)

In this case, the standard for FLSA "willfulness" is so relatively mild that Plaintiffs could prove willfulness even if they could only prove that Union Hospital "simply disregarded the possibility that it might be violating the FLSA" when it programmed its time keeping and pay roll software to round time entries in and time entries out in Union Hospital's favor. *Schnepf,*

2012 WL 442331 at *5.  Plaintiffs have alleged far more than just Union Hospital's failure to make adequate inquiry into its FLSA compliance.  Plaintiffs have alleged that Union Hospital knowingly and intentionally implemented a time rounding system with the intended purpose to skim earned wages from its employees ("in order to pay less in wages to its employees than it owed and less than was reported and earned by the employees.") (Docket Entry 30-1, ¶ 21)  So long as Plaintiffs prove the intentional implementation of this time rounding scheme, as alleged, the Court can absolutely conclude, based upon those facts, that Union Hospital committed a willful violation of the FLSA.

### C.  Union Hospital's Arguments Based Upon The Amendment to The Indiana Wage Payment Statute

### 1.  Union Hospital Makes No Argument About Its Liability Under the Indiana Wage Payment Statute, Only About The Damages It Owes

Union Hospital's partial motion to dismiss makes no argument that Plaintiffs' claims to recover unpaid (underpaid) wages under the Indiana Wage Payment Statute, I.C. 22-2-5, are flawed in any way related Union Hospital's liability for those violations.  It argues only that the July 1, 2015 amendment to the Indiana Wage Payment Statute concerning liquidated damages - which are over and above actual damages - will somehow affect the entire progress of this litigation.  Union Hospital is wrong.  Its argument for a retroactive application of the July 1, 2015 amendment to the Indiana Wage Payment Statute is directly contradicted by established Indiana caselaw and the language of the amended statute itself.

In this lawsuit, claims under the Indiana Wage Payment Statute (and recovery of damages) can be pursued in a class action formed under FRCP 23(b)(3).  The illegally rounded and unpaid wages owed to Union Hospital's employees will likely be recovered to a far greater

22

extent and more effective degree using a class action, which will not rely upon the FLSA's opt-in

mechanism.  Moreover, the Rule 23 class under the Indiana Wage Payment Statute is not

susceptible to the "gap time" argument that can be made under the FLSA, see *Jones v. C&D*

*Technologies, Inc.*, 8 F.Supp.3d 1054, 1069-1070 (S.D. Ind. 2014), and every dollar that Union

Hospital rounded and did not pay its employees can be recovered in the class action.

The Plaintiff class's state law claims under Indiana's Wage Payment Statute are derivative

of the class's FLSA claims.  See *Thacker v. Halter Vegetation Management, Inc.*, 2015 WL

417713 **12-13 (S.D. Ind., Jan. 30, 2015) *Kellar v. Summit Seating Inc.,* 664 F.3d 169, 178 (7th

Cir. 2011)*,* citing *Gehbauer v. Emas, Inc.,* 679 N.E.2d 1374, 1376–77 (Ind. App. 1997).  The

Indiana Wage Payment Statute claims are "derivative" in the sense that the class-wide

entitlement to unpaid wages for illegally rounded down hours of work arises by application of the

FLSA.  However, the Indiana Wage Payment Statute provides the class the right to be paid all

earned wages in full and on time, because the Indiana Wage Payment Statute governs both the

frequency and the amount an employer must pay its employee.   *Naugle v. Beech Grove City*

*Schools,* 864 N.E.2d 1058, 1062 (Ind. 2007); *St. Vincent Hosp. and Health Care Center, Inc. v.*

*Steele*, 766 N.E.2d 699, 704-705 (Ind. 2002); *City of Clinton v. Goldner*, 885 N.E.2d 67, 75 (Ind.

App. 2008).  I.C. 22–2–5–1(b) provides that "[p]ayment shall be made for all wages earned to a

date not more than ten (10) days prior to the date of payment."  At least to the extent claims

accrued prior to July 1, 2015, "An employer who fails to make payment of wages to any

employee as provided in Indiana Code section 22–2–5–1 is subject to liquidated damages and

attorney fees. I.C. § 22–2–5–2." *Naugle,* 864 N.E.2d at 1063.

In this case, when Union Hospital failed to pay each class member for compensable work

(time recorded on the hospital's system but rounded down) on that employee's regularly scheduled pay day, Union Hospital violated the Indiana Wage Payment Statute and subjected itself to penalties under I.C. 22-2-5-2.  Importantly, the Indiana Wage Payment Statute is a penal statute which, being in derogation of the common law, must be strictly construed. *E & L Rental Equipment, Inc. v. Bresland*, 782 N.E.2d 1068, 1070 (Ind. App. 2003).  The FLSA and Indiana Wage Payment Statute claims are complementary.  Union Hospital owes class-wide damages under the Indiana Wage Payment Statute because it was not paying class members wages in full when earned.  The penalties for late payment of wages are mandatory.  *Id.*

Also, importantly, the FLSA contains a savings clause.  29 USC § 218.  See *Spoerle v. Kraft Foods Global, Inc.,* 614 F.3d 427, 429 (7th Cir.2010).  The FLSA does not conflict with a state law merely because the latter provides more rigorous protections or greater benefits to employees.  *See* U.S. Dep't of Labor, Wage & Hour Div. Op. Letter, 2006 DOLWH LEXIS 12, at *1 (March 10, 2006) ("[N]o provision of the FLSA preempts a state law or municipal ordinance that provides greater benefit to employees.").

The Indiana Wage Payment Statute class action claims are important because they provide protections the FLSA does not.  While courts have interpreted the FLSA to require that wages be paid "on time," see *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993), the FLSA does not specifically address the deadline for payment of a wage, nor does it provide specific penalties for the late payment of wages.  The Indiana Wage Payment Statute provides specific deadlines for payment, I.C. 22–2–5–1(b).

Plaintiffs certainly think damages are important to this lawsuit, but the parties and the Court have to address class certification and Union Hospital's liability for its class-wide time

rounding violations first.  Damages can be calculated afterward.

## 2. *The July 1, 2015 Amendment To The Indiana Wage Payment Statute Does Not Apply Retroactively*

The amendment to the Indiana Wage Payment Statute will only have prospective application from July 1, 2015 forward.  The expressly-stated "effective" date of the amended I.C. 22-2-5-2 ("Failure to pay; damages; actions for recovery") was "July 1, 2015."  P.L. 193-2015, SEC. 1.  Liquidated damages for late payment of wages, which had been mandatory under the previous version of the statute, are now, to a point, discretionary with the Court.  ("In addition, if the court in any such suit determines that the person, firm, corporation, limited liability company, or association that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.")

Schneider and Breneman did not work for Union Hospital on or after July 1, 2015.  They did file their Complaint on July 6, 2015 (Docket Entry 1).  If discovery shows that Union Hospital has continued to round employee time records in the same way and did not change its rounding practice after the suit was filed, the Court can decide (with input from the parties) to:

1. Define and limit the FRCP 23 Class to those with claims under the Indiana Wage Payment Statute which arose on or before June 30, 2015;

2. Create, for damages purposes, a subclass of FRCP 23 plaintiffs who have damages which have accrued on or after July 1, 2015; or

3. Determine that Union Hospital was not "acting in good faith" on and after July 1, 2015 when it continued to illegally round its employees' time card entries and systematically underpaid wages to those employees (and everyone receives treble damages regardless).

"The general rule in Indiana is that statutes are to be given prospective effect only, unless

the legislature unequivocally and unambiguously intended retroactive effect as well." *Johnson v. State*, 36 N.E.3d 1130, 1134 (Ind. App. 2015), citing *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005).  This amendment to the Indiana Wage Payment Statute says nothing about retroactive application, but instead, expressly states that it is "effective" July 1, 2015.  No exception to the rule applies.  The statute's change to the mandatory nature of liquidated damages only became effective on July 1, 2015 and should have little impact on this lawsuit.

This distinction is important, because, prior to July 1, 2015, the Indiana Wage Payment Statute did not have any type of "good faith defense."  The Wage Payment statute is a penal statute which, being in derogation of the common law, must be strictly construed.  *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 835 (Ind. App. 1995), *abrogated on other grounds by St. Vincent Hosp.,* 766 N.E.2d at 704–05. The statute governs not only the frequency, but also the amount an employer must pay its employee. *St. Vincent Hosp.,* 766 N.E.2d at 704.  The (previous version) Indiana Wage Payment Statute provided a mandatory damage:

> "When an employer fails to make payment of wages in accordance with Indiana's Wage Payment Statute, the employer is also required to "pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due...."

*Mathews v. Bronger Masonry, Inc*. 772 F.Supp.2d 1004, 1015 (S.D.Ind. 2011), citing I.C. 22–2–5–2.  Moreover, while the FLSA holds the possibility of a good faith defense which could eliminate liquidated damages, see 29 USC § 260, the pre-July 1, 2015 IWPS did not permit any good faith defense.  *Naugle,* 864 N.E.2d at 1065 -1066.

### a. Indiana Law Regarding Retroactive Application of Statutes

The case of *The Pantry, Inc. v. Stop-N-Go Foods, Inc*., 777 F.Supp. 713 (S.D. Ind. 1991)

is from 1991, but all of the law remains valid.  Judge Tinder collected Indiana case law

discussing any retroactive application of an amended statute:

> "The analysis below proceeds against a backdrop of statements made by Indiana courts regarding retroactive application of statutes.  Indiana law has firmly and consistently held that a statute is presumed to operate prospectively only, unless the statute explicitly states otherwise.  *Manns v. State Dept. of Highways*, 541 N.E.2d 929 (Ind. 1989); *Gosnell v. Indiana Soft Water Serv., Inc.*, 503 N.E.2d 879 (Ind. 1987); *International Fidelity Ins. Co., Inc. v. State*, 567 N.E.2d 1161 (Ind. App. 1991); *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045 (Ind. App. 1990); *Bailey v. Menzie*, 505 N.E.2d 126 (Ind. App. 1987).  Retroactive application is the exception; laws are applied prospectively absent strong and compellling reasons.  *Arthur v. Arthur*, 519 N.E.2d 230, 231 (Ind. App. 1988), aff'd, 531 N.E.2d 477 (Ind. 1988).
>
> Indiana courts adhere to a strict rule of construction against retroactive operation and will prohibit such unless the legislature's intention to have the statute apply retroactively is unequivocally and unambiguously shown by necessary implication.  *Turner v. Town of Speedway*, 528 N.E.2d 858, 863 (Ind. App. 1988).  Under certain conditions statutes may be applied retroactively if the legislature so intended but yet failed to indicate in the language.
>
>> 'A statute must be so construed as to make it effect the purpose for which it was enacted, and if necessary to that end, it will be applied to past as well as to future transactions, although it does not in terms so direct, unless to do so will impair some vested right or violate some constitutional guaranty.'
>
> *Connecticut Mut. Life Ins. Co. v. Talbot*, 14 N.E. 586, 589, 113 Ind. 373, 378 (1887); *Standard Accident Ins. Co. v. Miller*, 170 F.2d 495, 497 (7th Cir. 1948); *Hiatt v. Howard*, 8 N.E.2d 136, 138, 104 Ind. App. 167, 171 (1937).  Thus, Indiana law prohibits impairment of vested rights under any circumstance, yet allows retroactive application of an amendment if it is clear the legislature intended the amendment to operate upon prior conduct."

*The Pantry, Inc.*, 777 F. Supp. at 719.

### b.  Retroactive Application of an Amended Statute May Only Apply To Procedural or Remedial Amendments, But an Amendment That Takes Away Any Vested Right Cannot Be Applied Retroactively.

As described above, Indiana law is clear that, absent strong and compelling reasons to do

otherwise, statutes will normally be given only prospective application.  *Sack v. Estate of*

*Hubbell*, 613 N.E.2d 868, 869 (Ind. App. 1993).  "Statutes addressing merely procedural or remedial matters may be applied retroactively, although such application is not required."  *Id*. at 869-970.  "If new legislation only changes a mode of procedure in the law while providing a remedy substantially similar to the existing one and does not create or take away vested rights, it will be applied to all cases pending at and subsequent to its effective date."  *Estate of Robinson v. C & 1 Leasing, Inc*., 691 N.E.2d 474, 476 (Ind. App. 1998).

Additionally, Indiana courts define a "remedial" statute as one that is intended "to cure a defect or mischief" in a prior statute.  *Johnson v. State*, 36 N.E.3d 1130, 1134 (Ind. App. 2015), citing *W.H. Dreves, Inc. v. Osolo Sch. Twp. of Elkhart Cnty*., 28 N.E.2d 252, 254 (Ind. 1940) ("It is recognized that the legislature may, by a subsequent statute, correct any omission or irregularity in a proceeding which it might have dispenses with by a prior statute.").  The amendment to I.C. 22-2-5-2 in the Indiana Wage Payment Statute was a change from mandatory liquidated damages - up to a treble damage - to a discretionary liquidated damages ("an amount equal to two (2) times the amount of wages due the employee").  The Public Law enacting the amendment described July 1, 2015 as the "effective date."  The law is not remedial, and the law says nothing about remedying any prior mistake in the law.

More importantly, the amendment in I.C. 22-2-5-2 changes a vested right to a particular damage in a wage claim.  Under the prior version of the Indiana Wage Payment Statute, treble damages were mandatory and there was no good faith defense of any kind to a violation of the statute.  *Naugle,* 864 N.E.2d at 1065 -1066.  When an amendment creates a change in available damages, it cannot be applied retroactively.  *Gosnell*, 503 N.E.2d at 879-880, citing *Western Smelting & Metals, Inc. v. Slater Steel, Inc*., 621 F.Supp. 78; *Moore v. Waitt*, 298 N.E.2d 456,

460 (Ind. App. 1973).

### 3.  Union Hospital's Question for the Indiana Supreme Court Cannot Be Certified Because It Is Not "Outcome Determinative" and the Question Must Be Decided Under "Clear Controlling" Indiana Precedent

"The Indiana Supreme Court rule authorizing certified questions from federal courts imposes two requirements: The state-law issue must be 'determinative' of the case and not governed by 'clear controlling' state-law precedent."  *Cedar Farm, Harrison Cty., Inc. v. Louisville Gas & Elec. Co.*, 658 F.3d 807, 813 (7th Cir. 2011).   Indiana Rule of Appellate Procedure 64(A).  "Certification is appropriate 'when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue.'" *Lockhart v. ExamOne World Wide, Inc.*, 904 F.Supp.2d 928, 945 (S.D. Ind. 2012), citing *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).  In this case, Union Hospital's proposed question fails on two grounds. It does not focus upon an "outcome determinative" issue and Indiana's precedents make clear that the amendment to the Indiana Wage Payment Statute would never be applied retroactively.

First, the amendment to I.C. 22-2-5-2 affects only the multiplier (up to a treble damage) of the actual damages at issue.  The Indiana Wage Payment Statute has not been amended or modified in any way regarding 1) an employer's liability for its violation, 2) an employer's obligation to pay the actual wages that were due in full and on time, and 3) an employer's obligation to pay the employee's reasonable attorney's fees and costs for any such violation.  As described above, effective July 1, 2015, treble damages which had been mandatory for any violation of the Indiana Wage Payment Statute are now discretionary, to a degree, based upon the

29

trial court's determination of whether an employer acted in good faith.  Such an amendment to

the statute is in no way "outcome determinative."  There is a big difference between the outcome

of the case itself - who wins and who loses - and a mere question about the damages available if

the plaintiffs win.  Indeed, to certify a question of state law, that question must be determinative

of the "result in the pending federal case."  *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d at

673.

   Second, as described above, Indiana law is very clear that the July 1, 2015 amendment to

the Indiana Wage Payment Statute's damages provision will apply only prospectively and will

certainly not, as Union Hospital argues, apply retroactively.  The amendment to the damages

provision of the Indiana Wage Payment Statute at I.C. 22-2-5-2 is not merely "procedural" and

the plain language of the amended statute itself makes clear that the amendment was not made

for any "remedial" purposes.  Again, a "remedial" statute is one that is intended "to cure a defect

or mischief" in a prior statute.  *Johnson v. State*, 36 N.E.3d at 1134.  This amendment creates a

substantive change to the application of liquidated damages, but can be in no way called a

remedy to cure a prior defect or mischief in the old statute.

   Finally, certification of a question of state law to a state supreme court is "neither

mandated nor always necessary."  *Rain v. Rolls Royce Corp.*, 626 F.3d 372, 378 (7th Cir. 2010).

"Because the procedure is not without costs to the litigants and to the state court which already

must contend with a crowded docket of its own, .. (courts) approach the decision to certify with

circumspection."  *Id*. at 378-379; *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 417 (7th Cir.

2004).  Even if it could be certified, Union Hospital's question that focuses only upon damages is

not the type of question that justifies the long delays and added expense of certification.

#### 4.  *Union Hospital Did Not Act in Good Faith*

Finally, Union Hospital intentionally mischaracterizes the amended Indiana Wage Payment Statute provisions at I.C. 22-2-5-2 by claiming a plaintiff is now required to show that an employer acted in "bad faith."  (Docket Entry 43, pp. 9-10).  The amended statute says no such thing.  It reads:

> "**22-2-5-2      Failure to pay; damages; actions for recovery**
>
> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee for the amount of unpaid wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee.  The court shall orders as costs in the case a reasonable fee for the plaintiff's attorney and court costs.  *In addition, if the court in any such suit determines that the person, firm, corporation, limited liability company, or association that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.*"

(emphasis added).

First, Schneider and Breneman never worked for Union Hospital on or after the July 1, 2015 date the Indiana Wage Payment Statute was amended.  The statute governing their claims and the class-wide claims of every person similarly situated is and will be the pre-July 1, 2015 version of the Indiana Wage Payment Statute and the caselaw thereunder.[4]  Under the prior version of the Indiana Wage Payment Statute, there was no "good faith" defense to violations of the Wage Payment Statute whatsoever.  *Naugle,* 864 N.E.2d at 1065 -1066.

---

[4]Although it would not be efficient, the Court could always limit Schneider and Breneman's Rule 23 class action claims under the Indiana Wage Payment Statute to claims arising before July 1, 2015 and permit a different plaintiff to file a new class action against Union Hospital for violations occurring on or after July 1, 2015.

Second, contrary to Union Hospital's remarks (Docket Entry 43, pp. 9-10), the Indiana

Wage Payment Statute's amended language discussing "liquidated damages" does not require a

plaintiff's allegation or proof of any "bad faith" action by an employer.  The new language of the

statute does not actually explain the burden of proof, but says only that liquidated damages can

be awarded if a court determines an employer "was not acting in good faith."  A court can

certainly determine that an employer did not seek to comply with the Indiana Wage Payment

Statute in a good faith manner without going so far as to rule that the employer engaged in

behavior that can be labeled "bad faith."

Finally, and in direct contradiction of Union Hospital's argument and FRCP 12(b)(6)

motion regarding a "failure" to allege "bad faith" against Union Hospital, the Plaintiffs have very

definitely alleged intentional, deliberate and very bad faith behavior against Union Hospital

based upon its wage skimming scheme tied into its one-sided rounding of employee time records.

Again, as also described in the FLSA section above, Plaintiffs have alleged facts that establish

Union Hospital's willful and intentional, class-wide  violations of its employees' rights under

both the FLSA and the Indiana Wage Payment Statute (Docket Entry 30-1, ¶¶ 1 - 34).  Those

allegations included the express statements in Plaintiffs' Paragraph 21 - "Union Hospital

deliberately and intentionally implemented a time card rounding system in order to pay less in

wages to its employees than it owed and less than was reported and earned by the employees."

(Docket Entry 30-1, ¶ 21)  For purposes of any FRCP 12(b)(6) motion, if a finding of "bad faith"

were necessary, Plaintiffs have certainly alleged the type of "state of mind reflecting dishonest

purpose, moral obliquity, furtive design or ill will" (See Docket Entry 43, p. 10) that Union

Hospital claims is necessary to succeed in a bad faith claim.  An employer who "deliberately"

sets up a time rounding scheme for the exact purpose of paying less in wages than it owes to its employees engages in that intentional and "bad faith" failure to comply with the Indiana Wage Payment Statute that Union Hospital wants alleged.

### D. Breach of Contract Theory

Under Indiana law all employment relationships are contracts, either oral or written. *Lee v. Review Bd. of IN Employment Sec. Div.*, 518 N.E.2d 1118, 1120 (Ind. App. 1988); *Remmers v. Remington Hotel Corp.*, 56 F.Supp.2d 1046, 1052 (S.D. Ind. 1999). Moreover, in Indiana, an employer breaches a contract with an employee when the employer fails to pay all wages owed. See *Felker v. Southwestern Emergency Medical Services, Inc.*, 521 F.Supp.2d 857, 867-868 (S.D. Ind. 2007) (employer underpaid wages and breached contract); *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 52-54 (Ind. App. 1986). Union Hospital argues that an employment contract must contain four elements in order to be actionable, but that does not mean that each of those elements must be expressly pleaded in a complaint.

To pass muster, a complaint must simply provide enough facts to state a claim to relief that is " . . . plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." In fact the Court there expressly said that " . . . a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . to meet that "plausibility" requirement. Therefore, although Union Hospital contends there are four requirements that must be met to have a viable employment contract upon which a breach claim may be founded, certainly not all such statements must necessarily be included in the Complaint. See *Sweet v. Indianapolis Jet Center, Inc.*, 918 F. Supp. 2d 801, 803 (S.D. Ind. 2013) ("[a] complaint's factual

33

allegations are plausible if they "raise the right to relief above the speculative level.")

That said, Plaintiffs' Amended Complaint *does* specifically allege all four of the elements necessary to prove breach of an employment contract.  Plaintiffs expressly allege 1) "the place of employment" (Docket Entry 30-1, ¶ 3), 2) "the period of employment" for each (Docket Entry 30-1, ¶¶ 1 & 2), 3) "the nature of the services that the employee is to render" (services of an hourly paid employee) (Docket Entry 30-1, ¶¶ 1 & 2), and 4) "the compensation the employee was to receive" (stating each Plaintiff's hourly rates of pay) (Docket Entry 30-1, ¶¶ 14 & 16).

Union Hospital argues "[i]n this case, Plaintiffs' "breach of contract" allegations are woefully deficient, in that they fail to assert factual allegations related to the key contract elements required under *Keating* and *Majd Pour*."  That statement is untrue and irresponsible. Plaintiffs' class-wide claim for a breach of contract is throughly and expressly set out and unquestionably sails  past the *Twombly* "plausibility" benchmark. The Court should deny the Hospital's Motion to Dismiss the Plaintiffs' breach of contract claims.

Plaintiffs' class-wide breach of contract theory is merely an example of alternative pleading.  See *F.D.I.C. v. Kime*, 12 F.Supp.1113, 1125 (S.D. Ind. 2014)  It is intended to provide a right of recovery to those victims of the time rounding who were involuntarily terminated and who cannot participate in the Rule 23 class based upon the Indiana Wage Payment Statute (which protects only current employees and those who voluntarily resign).

## IV.  CONCLUSION

For all of the above and foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion for 12(B) Partial Dismissal of the Amended Complaint and Certification of State Law Question, and for all other relief that is just and appropriate in the

circumstances.

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
Phone:  (812) 232-9691
Fax: (812) 234-2881
kondras@huntlawfirm.net

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading was filed electronically on December 16, 2015.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Stephen W. Lyman
Dana E. Stutzman
Nicholas S. Johnston
HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
Suite 2000, Box 82064
One American Square
Indianapolis, IN 46282

HUNT, HASSLER, KONDRAS & MILLER LLP

s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.