UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| AMY L. SCHNEIDER and JANET E. BRENEMAN, | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| *vs.* | ) | 2:15-cv-00204-JMS-DKL |
| | ) | |
| UNION HOSPITAL, INC. | ) | |
| *Defendant.* | ) | |

## **ORDER**

Presently pending in this putative collective and class action brought under the Fair Labor Standards Act ("FLSA") and the Indiana Wage Payment Act ("IWPA") is Defendant Union Hospital, Inc.'s ("Union") Motion for 12(b) Partial Dismissal of the Amended Complaint and Certification of State Law Question.  [Filing No. 42.]

## I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'"  *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In reviewing the sufficiency of the complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state

a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.
### BACKGROUND

The factual allegations in the First Amended Combined Class Action and Collective Action Complaint for Damages, which the Court must accept as true, are as follows:

### A.  Plaintiffs' Employment With Union

Plaintiff Amy Schneider began working for Union at its Terre Haute, Vigo County hospital in January 2008, and remained employed there until May 1, 2015, when she voluntarily ended her employment to accept a similar position with a contracting company that performed work for Union.  [Filing No. 54 at 2.]  During her employment, Ms. Schneider was paid on an hourly basis and treated as a non-exempt employee.  [Filing No. 54 at 2.]  Plaintiff Janet Breneman began working for Union, also at its Terre Haute, Vigo County hospital, in January 2006, and remained employed there on a full time basis until Fall 2011, when she retired.  [Filing No. 54 at 3.]  She was then re-hired by Union in November 2012 on an hourly basis, and continued to work there until May 19, 2015, when she voluntarily resigned her employment.  [Filing No. 54 at 3.]  At all times during her employment with Union, Ms. Breneman was paid wages on an hourly basis and treated as a non-exempt employee.  [Filing No. 54 at 3.]

### B.  Union's Method of Paying Employees

Union used, and currently uses, an electronic time keeping system for its hourly-paid employees, which is activated by each employee's use of a specified telephone in his or her department.  [Filing No. 54 at 3.]  Employees use the telephone to clock in and out, by recording the time they begin their work for each shift and the time they end their work for each shift.  [Filing No. 54 at 3.]  Although Union does not record its non-exempt, hourly-paid employees' work time in any other way, it does not pay its employees based on the time records recorded by the electronic telephone system.  [Filing No. 54 at 3.]

Union pays its hourly employees for time worked in increments of one-tenth of an hour. [Filing No. 54 at 4.]  When an employee clocks in, his or her time is rounded up to the nearest one-tenth of an hour, and when an employee clocks out, his or her time is rounded down to the nearest one-tenth of an hour.  [Filing No. 54 at 4.]  For example, if an employee clocks in at 6:55 a.m. and clocks out at 5:05 p.m., his or her hours worked would be considered 7:00 a.m. to 5:00 p.m. under Union's rounding system.  [Filing No. 54 at 4.]  Plaintiffs allege that this rounding system is an FLSA violation and results in employees being underpaid.  [Filing No. 54 at 4-5.]

From July 6, 2012 through Ms. Schneider's last day of employment at Union, she worked 681 shifts.  [Filing No. 54 at 6.]  On 30 of those shifts, Ms. Schneider clocked both in and out at exactly one-tenth of an hour marks, so was paid for her actual recorded work time.  [Filing No. 54 at 6.]  On the remaining 651 shifts, Union rounded Ms. Schneider's clock-in and clock-out times in its favor, resulting in Union not paying Ms. Schneider for at least 38.95 hours of recorded work time.  [Filing No. 54 at 6.]  Using her hourly rate range of $18.02 to $18.75 during this time, Union would owe Ms. Schneider wages of at least $701.88.  [Filing No. 54 at 6.]

- 3 -

From July 6, 2012 through Ms. Breneman's last day of employment, she worked 333 shifts. [Filing No. 54 at 7.]  On 2 of those shifts, Ms. Breneman clocked both in and out at exactly one-tenth of an hour marks, so was paid for her actual recorded work time.  [Filing No. 54 at 7.]  On the remaining 331 occasions, Union rounded Ms. Breneman's clock-in and clock-out times in its favor, resulting in Union not paying Ms. Breneman for at least 33.65 hours of recorded work time. [Filing No. 54 at 7.]  Using her average hourly rate of $12.15 during this time, Union would owe Ms. Breneman at least $408.85.  [Filing No. 54 at 7.]

### C.  Union's Personnel and Disciplinary Policies

Relevant to clocking in and out, Union has set forth the following policy:

> Unless authorized to begin work early by a supervisor, no employee should begin work or clock in more than five (5) minutes before the start of the shift.  Similarly, unless authorized to work late by a supervisor no employee should continue working or clock out later than five (5) minutes after the end of the shift…. Example: If shift is 7-7:30, the employee is expected to start work at 7 a.m. and complete the shift at 3:30 p.m.  Unless a supervisor authorizes otherwise, the employee should begin work and clock in between 6:55 a.m. and 7:00 a.m. and end work and clock out between 3:30 p.m. and 3:35 p.m.

[Filing No. 54 at 5.]  Union also has the following policy:

> Employees are expected to be in their department and ready to work at the beginning of the shift…. Example: an employee working 7 a.m. to 3:30 p.m. would be ready to work at 7 a.m.  7:01 is considered tardy.

[Filing No. 54 at 5.]

### D.  The Litigation

Ms. Schneider and Ms. Breneman initiated this litigation on July 6, 2015, [Filing No. 1], and filed the operative First Amended Combined Class Action and Collective Action Complaint for Damages on November 5, 2015, [Filing No. 54].  Plaintiffs assert claims against Union on behalf of themselves and all similarly-situated current and former employees of Union who "were similarly denied payment of wages and overtime compensation under [Union's] compensation

scheme that involved the manipulation of time records and the failure to pay wages for work at the beginning and the end of [Union's] employees' shifts." [Filing No. 54 at 10.] Specifically, Plaintiffs assert claims for: (1) violation of the FLSA for failing to pay minimum wages and overtime wages as required by the FLSA on behalf of all similarly situated current and former Union employees; (2) violation of the IWPA, Ind. Code § 22-2-5, on behalf of all current Union employees or former Union employees who voluntarily resigned from employment; and (3) breach of contract on behalf of all current and former Union employees. [Filing No. 54 at 13-16.]

Union filed the pending Motion to Dismiss on December 3, 2015, arguing that parts of Plaintiffs' lawsuit should be dismissed because: (1) the Court lacks subject matter jurisdiction over Plaintiffs' FLSA minimum wage claims; (2) in any event, Plaintiffs fail to sufficiently plead their FLSA minimum wage claims; (3) Plaintiffs fail to sufficiently plead that Union willfully violated the FLSA; (4) Plaintiffs fail to sufficiently plead facts giving rise to a bad faith violation of the IWPA, so their claim for treble damages should be dismissed; and (5) Plaintiffs have not sufficiently pled facts giving rise to a breach of contract claim. [Filing No. 43 at 3-10; Filing No. 43 at 15-16.] Union also argues that if the Court finds that Plaintiffs have sufficiently pled facts giving rise to a bad faith violation of the IWPA, the Court should certify the question of which version of the IWPA governs this action to the Indiana Supreme Court. [Filing No. 43 at 11-14.]

### III.
#### DISCUSSION

At the outset, the Court notes the Seventh Circuit Court of Appeal's instruction that "employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)." *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 973-74 (7th Cir. 2011). *See also Robertson v. Steamgard*, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("the Seventh

Circuit has held that the FLSA is 'amenable to state-law claims for related relief in the same federal proceeding'").  The Court will heed that instruction, and finds it proper that Plaintiffs have brought both their FLSA claims and their IWPA and breach of contract claims in the same litigation.

### A.  FLSA Minimum Wage Claims

Union argues that the Court does not have subject matter jurisdiction over Plaintiffs' FLSA minimum wage claims and that, in any event, they have not sufficiently alleged those claims.  [Filing No. 43 at 3-8.]  The Court will address the subject matter jurisdiction argument first.  *See Yassan v. J.P. Morgan Chase & Co.,* 708 F.3d 963, 967 n.1 (7th Cir. 2013) (where defendant moves to dismiss on both jurisdictional grounds under Fed. R. Civ. P. 12(b)(1) and adequacy grounds under Fed. R. Civ. P. 12(b)(6), court must consider jurisdictional arguments first).

#### 1.  *Subject Matter Jurisdiction*

Union argues in its Motion to Dismiss that a named plaintiff cannot acquire standing to sue by suing on behalf of others who suffered an injury that the named plaintiff does not share.  [Filing No. 43 at 4.]  Union asserts that there are no allegations in the Amended Complaint showing that the named plaintiffs have minimum wage claims, and that the allegations actually show that both Ms. Schneider and Ms. Breneman earned more than minimum wage during their time at Union so they have pleaded themselves out of asserting an FLSA minimum wage claim.  [Filing No. 43 at 5.]

In response, Plaintiffs argue that the Court has subject matter jurisdiction over this matter because the FLSA is a federal law, and there is supplemental jurisdiction over their IWPA and breach of contract claims.  [Filing No. 45 at 12.]  Further, they contend that Union does not challenge their collective action minimum wage FLSA claim, nor their standing to pursue their FLSA overtime claim.  [Filing No. 45 at 12.]  Plaintiffs argue that they "have not alleged separate FLSA

overtime and FLSA minimum wage claims," and are "pursuing collective action claims under the FLSA based upon [Union's] illegal time rounding scheme which resulted in unpaid wages." [Filing No. 45 at 12.]  Plaintiffs assert that they need only be "similarly situated," not "identically situated," to bring collective action claims for the "illegal time rounding scheme." [Filing No. 45 at 13.] Plaintiffs contend that legal precedent does not require that a named plaintiff who is serving as the representative plaintiff in an FLSA collective action based on a common FLSA violation must have both individual overtime damages and individual minimum wage damages.  [Filing No. 45 at 14.]

On reply, Union reiterates its standing arguments and also contends that Plaintiffs' argument that because they have standing to assert an FLSA overtime claim, they also have standing to assert an FLSA minimum wage claim, "would lead to an absurd result."  [Filing No. 53 at 3.] Union argues that Plaintiffs must have a personal injury arising from the minimum wage violation in order to have standing to assert that claim, and they do not here.  [Filing No. 53 at 3.]  Therefore, it argues, Plaintiffs cannot assert that claim on behalf of themselves or others.  [Filing No. 53 at 3.]

There are two "concepts" of standing – "Article III standing, which requires just an injury in fact, and 'prudential' standing, a more complex, judge-made concept of standing." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 744 (7th Cir. 2007).  Union challenges Plaintiffs' Article III standing.  [*See* Filing No. 43 at 3-6.]  Standing ensures that the parties at issue have a "vested interest in the case" and guarantees that the Court only adjudicates "cases and controversies."  *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641 (7th Cir. 2014).  To satisfy Article III's standing requirements, a litigant must show that: "(1) it has suffered an actual or im-

- 7 -

minent concrete and particularized 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 641-42 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

A plaintiff has Article III standing if she "may well be harmed by" defendant's actions. *MainStreet*, 505 F.3d at 744. The bar for establishing Article III standing is lower at the pleading stage. *See United States v. $196,969.00 U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013) (holding that plaintiff need not "prove Article III standing" in the pleading context) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)). "[S]tanding in the Article III sense does not require a certainty or even a very high probability that the plaintiff is complaining about a real injury, suffered or threatened." *MainStreet*, 505 F.3d at 744. "[T]he fact that a loss or other harm on which a suit is based is probabilistic rather than certain does not defeat [Article III] standing." *Id.* (citation omitted). "All that a plaintiff need show to establish standing to sue in the Article III sense is a reasonable probability – not a certainty – of suffering tangible harm unless he obtains the relief that he is seeking in the suit." *Id.* at 745. The Article III standing requirement is meant to keep cases involving "some abstract psychic harm or a one-day-I'll-be-hurt allegation" out of federal court. *Id.*

In order to establish Article III standing, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citations and quotations omitted).

Here, Ms. Schneider and Ms. Breneman do not argue in response to Union's Motion to Dismiss that they have viable FLSA minimum wage claims.  This is likely so because their allegations in the Amended Complaint establish that they do not.  Specifically, they allege that:

· Ms. Schneider's hourly rate of pay ranged from $18.02/hour to $18.75/hour; and

· Ms. Breneman's hourly rate of pay ranged from $11.90/hour to $12.38/hour.

[Filing No. 54 at 6-7.]  These hourly rates of pay are well above the current $7.25/hour minimum wage.  Additionally, Plaintiffs acknowledge that after reviewing their time records, "it appears very possible that [Ms.] Breneman's unpaid wages cannot be characterized as either sub-minimum wages or unpaid overtime wages."  [Filing No. 45 at 13.]  In short, Ms. Schneider and Ms. Breneman acknowledge through the allegations in their Amended Complaint, and do not dispute, that they themselves do not have FLSA minimum wage claims.

Plaintiffs argue that they are not alleging "separate FLSA overtime and FLSA minimum wage claims," and that it is enough to confer standing that they were somehow affected by Union's rounding policy.  [Filing No. 45 at 12.]  But "a plaintiff must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).  The Court rejects the notion that because Plaintiffs may have standing to pursue an FLSA overtime claim, they also have standing to pursue an FLSA minimum wage claim when their own allegations clearly indicate that they do not.  The Court also rejects Plaintiffs' argument that because they have somehow been affected by Union's rounding policy, they have standing to assert any claim related to that policy.

It is important to note that this case is at the motion to dismiss stage, and the Court is not now considering whether the case can proceed as a collective and/or class action.  Plaintiffs rely

upon cases in the collective action context that, they argue, stand for the proposition that "[d]iffer-ences in class member damages do not defeat certification of an FLSA collective action, much less a lead plaintiff's standing when challenged in a FRCP 12(b)(1) motion." [*See* Filing No. 45 at 13-14.] These cases do not stand for the proposition that a named plaintiff can assert a claim on behalf of a collective action class that she would not have standing to assert individually. The Court must determine whether Plaintiffs have standing of their own accord, and not whether other collective action members have standing. *See Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1999) (a class representative's standing must exist at the time suit is brought). Also important is the fact that Plaintiffs' own allegations indicate that they do not have standing to assert an FLSA minimum wage claim. In other words, rather than the Court finding that they have not adequately alleged standing, Plaintiffs here have affirmatively pled themselves out of an FLSA minimum wage claim.

Plaintiffs insinuate that perhaps the standing requirements for collective actions are differ-ent than those for Fed. R. Civ. P. 23 class actions, and that a common scheme is enough to conclude that Plaintiffs can bring FLSA minimum wage claims in a collective action context. But they do not point to any legal authority for their argument. Indeed, one district court explained that, just as in a putative class action, a named plaintiff in a collective action must have individual standing to proceed:

> Plaintiffs cannot establish standing by pointing to an injury that a defendant caused to a putative class member…. The standing requirement is no different in a collec-tive action suit. The principal difference between a class action and an FLSA col-lective action is that class actions primarily involve opt-out classes and FLSA col-lective actions are limited to opt-in classes…. [A] named plaintiff in a collective action has adequately pleaded standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him…. In sum, plaintiffs allege standing to sue…defendants on the basis that members of the putative class were employed by those defendants, and accordingly suffered the same injury as did plaintiffs. That basis is inadequate to allege standing.

*Lucas v. BMS Enterprises, Inc.*, 2010 WL 2671305, *2-3 (N.D. Tex. 2010).

- 10 -

Just as Plaintiffs must establish that they have individual standing to assert claims brought as part of a putative class action, so too must they have standing to assert FLSA claims as part of a collective action. *See Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 497 (D. Neb. 2009) (finding that named plaintiff could not represent collective action members for FLSA claim where nothing in the record indicated he suffered the same injury as class members (not being paid for time donning and doffing protective equipment, or cleaning and sanitizing work equipment and tools)). Based on Plaintiffs' own allegations, it is clear that they do not have standing to assert claims for FLSA minimum wage violations. Accordingly, those claims – both individually and on behalf of a collective class – are dismissed.[1]

### B.  Willfulness Allegations for FLSA Overtime Claims

Plaintiffs allege that Union "intentionally, knowingly, with reckless disregard and systematically violated its employees' rights to earned wages through [its] illegal time card rounding practices." [Filing No. 54 at 9.] Union argues in its Motion to Dismiss that Plaintiffs' allegations are "legal conclusion[s] couched as…factual allegation[s]…." [Filing No. 43 at 8.] It asserts that Plaintiffs' allegations are not enough to sufficiently plead willful violations. [Filing No. 43 at 9.]

Plaintiffs respond that they have sufficiently pled that Union willfully violated the FLSA, such that a three-year statute of limitations would apply to their claims. [Filing No. 45 at 19-22.] Plaintiffs point to their allegations that Union deliberately and intentionally implemented a time card rounding system in order to pay less in wages to its employees than it owed and less than what the employees reported and earned. [Filing No. 45 at 20.] This, they argue, is enough to sufficiently allege a willful FLSA violation, leading to the longer three-year statute of limitations.

---

[1] Because the Court finds that Plaintiffs' FLSA minimum wage claims are dismissed for lack of standing, it need not also consider whether Plaintiffs have adequately alleged those claims under Fed. R. Civ. P. 12(b)(6).

[Filing No. 45 at 20-21.]  They assert that "the standard for FLSA 'willfulness' is so relatively mild that Plaintiffs could prove willfulness even if they could only prove that [Union] 'simply disregarded the possibility that it might be violating the FLSA' when it programmed its time keeping and pay roll software to round time entries in and time entries out in [Union's] favor." [Filing No. 45 at 21.]

On reply, Union reiterates its argument that Plaintiffs' allegations are legal conclusions couched as factual allegations.  [Filing No. 53 at 4.]

A defendant may raise the statute of limitations in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense...." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).  As the Seventh Circuit Court of Appeals has explained, a statute of limitations argument might more typically be raised in a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), but "the practical effect is the same." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).  When "the relevant dates are set forth unambiguously in the complaint," it is appropriate to consider the statute of limitations at the motion to dismiss stage.  *Id.*  Here, Plaintiffs allege their dates of employment in the Amended Complaint, so consideration of the statute of limitations issue is appropriate.

The FLSA provides that:

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the [FLSA]…may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued….

29 U.S.C. § 255(a).  An employer acts willfully in this context when it "knows or shows reckless disregard for whether [its] actions are unlawful under the FLSA."  *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Plaintiffs here allege that Union engaged in a scheme to round employees' clock-in time up to the nearest one-tenth of an hour, to round their clock-out time down to the nearest one-tenth of an hour, and to pay them based on the rounded times and not on actual clock-in times.  [*See* Filing No. 54.]  They specifically allege that Union violated its employees' rights "intentionally, knowingly, with reckless disregard and systematically…."  [Filing No. 54 at 9.]  The Court finds that Plaintiffs' allegations are sufficient to allege willful FLSA violations at the motion to dismiss stage of this litigation.  The rounding policy that Plaintiffs allege Union used is an obvious reduction in payment for hours worked, even more so when it results in underpayment of overtime wages (or potentially payment below minimum wage, for certain employees other than Plaintiffs), and allegations that Union used the rounding policy intentionally, knowingly, or with reckless disregard are enough to adequately allege willful FLSA violations.  Plaintiffs have pled a concrete, systemic FLSA overtime violation, and the Court denies Union's Motion to Dismiss on the ground that they have not adequately alleged willful violations.

**C.  IWPA Claim**

Union raises an argument similar to its willfulness argument in connection with Plaintiffs' IWPA claim – specifically, that Plaintiffs have not adequately alleged that Union acted in bad faith such that Plaintiffs would be entitled to treble damages.  [Filing No. 43 at 9-10.]  Union also argues that, should the Court conclude that Plaintiffs have sufficiently alleged bad faith, it should certify the question of which version of the IWPA governs this case to the Indiana Supreme Court.  [Filing No. 43 at 11.]  Union argues that the question of which version of the IWPA applies is significant

because its resolution "will impact the discovery, briefing, and the ultimate outcome of this case." [Filing No. 43 at 14.]

Plaintiffs respond that the IWPA was amended in July 2015, after they had both ceased employment with Union, so the amended version of the statute should not apply to their IWPA claims. [Filing No. 45 at 25-28.] They argue that the applicable older version of the IWPA does not contain a "good faith" defense, so they need not allege that Union acted in bad faith. [Filing No. 45 at 31.] In any event, however, they argue that they have adequately alleged that Union acted in bad faith. [Filing No. 45 at 32-33.] They also contend that the question of which version of the statute applies should not be certified to the Indiana Supreme Court because it can be decided by clear and controlling precedent, and it is not outcome determinative but rather goes to the issue of damages. [Filing No. 45 at 29-30.]

On reply, Union argues that the amended version of the IWPA applies based on principles of statutory interpretation, and reiterates its argument that Plaintiffs have not sufficiently pled bad faith IWPA violations. [Filing No. 53 at 6-17.] Union urges the Court to certify the issue of which version of the IWPA applies to Plaintiffs' claims to the Indiana Supreme Court if determination of that issue remains unclear. [Filing No. 53 at 17-18.]

The IWPA provides that:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall be liable to the employee for the amount of unpaid wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee. The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs. In addition, if the court in any such suit determines that the person, firm, corporation, limited liability company, or association that failed to pay the employee as provided in section 1 of this chapter was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.

Ind. Code § 22-2-5-2.  The "good faith" exception to § 22-2-5-2 was added by amendment on July

1, 2015.  *See* 2015 Ind. Legis. Serv. P.L. 193-2015 (H.E.A. 1469) (WEST).

      Union essentially argues that the amended version retroactively applies to Plaintiffs'

claims, so they need to allege that Union acted in bad faith – *i.e.*, that the "good faith" exception

does not apply – to be entitled to treble damages under the IWPA.  The Court finds that determi-

nation of which version of the IWPA applies to Plaintiffs' claims, and potential certification of

that issue to the Indiana Supreme Court, is premature at this point in the litigation.  This issue is

not outcome determinative, but goes to the issue of damages.  Absent a fully developed factual

record, which does not exist at this point, the Court finds determination of this issue – through

certification or otherwise – would be putting the cart before the horse.  On a full record, it is very

possible that Indiana law will provide adequate guidance to the Court in resolving this issue.

      Additionally, even if the amended version of § 22-2-5-2 were to apply to Plaintiffs' claims,

and even if Plaintiffs were required to plead that Union acted in bad faith at the motion to dismiss

stage, the Court has already found in connection with Plaintiffs' FLSA claim that they have suffi-

ciently alleged Union acted willfully.  The same holds true for adequately alleging bad faith for

purposes of the IWPA claim, and the Court denies this portion of Union's Motion to Dismiss

(including Union's request to certify the question to the Indiana Supreme Court).

### D.  Breach of Contract Claim

      Plaintiffs allege that Union has breached "its contractual promise to pay employees their

wages when [Union] rounded time records in a self-serving, non-neutral manner and failed to pay

employees wages for all hours worked."  [Filing No. 54 at 16.]  Union argues in its Motion to

Dismiss that Plaintiffs fail to allege any of the key elements of the existence of a contract.  [Filing

No. 43 at 15.]

Plaintiffs respond that "[u]nder Indiana law all employment relationships are contracts, either oral or written," and that an employer breaches a contract with an employee when the employer does not pay all wages owed. [Filing No. 45 at 33.] Plaintiffs also contend that they do not need to allege all of the elements of an actionable contract in their Amended Complaint but, in any event, they do make these allegations including the place of employment, the period of employment, the nature of the services the employee was to render, and the compensation the employee was to receive. [Filing No. 45 at 34.] Plaintiffs state that their breach of contract claim "is intended to provide a right of recovery to those victims of the time rounding who were involuntarily terminated and who cannot participate in the Rule 23 class based upon the [IWPA]." [Filing No. 45 at 34.]

Union argues on reply that a claim for breach of contract requires a contract to exist in the first place, and Plaintiffs have not pled the requisite facts to show that there was a valid contract. [Filing No. 53 at 18.]

Under Indiana law, a plaintiff must allege the existence of a contract, the defendant's breach thereof, and resulting damages. *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128-29 (Ind. Ct. App. 2011) (citations omitted). Here, Plaintiffs allege that with respect to them and "every [Union] current and former employee (including current employees, former employees who voluntarily resigned, and former employees who were involuntarily terminated), [Union] breached its contractual promise to pay employees their wages when [Union] rounded time records in a self-serving, non-neutral manner and failed to pay employees wages for all hours worked…. Those failures to pay wages in full…constitute class-wide breaches of contract." [Filing No. 54 at 16.] Tellingly, though, Plaintiffs do not allege the specific contours of any contract anywhere in the Amended Complaint. Their allegations do not put Union on notice

of the grounds upon which their breach of contract claim rests, *Erickson*, 551 U.S. at 93, and do not state a claim that is plausible on its face, *Twombly*, 550 U.S. at 555.

Even if Plaintiffs alleged that there was an implied contract between Union and its employees (which they do not), they do not cite to persuasive authority recognizing a breach of contract claim in a similar case. They argue in their response brief that "[u]nder Indiana law all employment relationships are contracts, either oral or written," [Filing No. 45 at 33], but none of the cases they rely upon recognize an implied breach of contract claim for non-payment of wages. *See Lee v. Review Bd. of Indiana Employment Sec. Div.*, 518 N.E.2d 1118, 1120 (Ind. Ct. App. 1988) (stating that "[a]n employment relationship rests upon contract, express or implied," but the case did not involve the recovery of unpaid wages. The *Lee* Court concluded that plaintiff voluntarily quit his job, so was not eligible for employment insurance benefits); *Remmers v. Remington Hotel Corp.*, 56 F.Supp.2d 1046, 1052 (S.D. Ind. 1999) (stating that both employment for a definite term and employment at will are "considered to be contractual," and finding that plaintiff's employment was at will so he could not recover damages when he was terminated). Plaintiffs also argue that "in Indiana, an employer breaches a contract with an employee when the employer fails to pay all wages owed," [Filing No. 45 at 33], but the cases they rely upon involve written employment agreements. *See Felker v. Southwestern Emergency Medical Services, Inc.*, 521 F.Supp.2d 857, 866 (S.D. Ind. 2007) (plaintiffs and defendant entered into written contracts for plaintiffs to provide services as emergency medical technicians); *Licocci v. Cardinal Associates, Inc.*, 492 N.E.2d 48, 50 (Ind. Ct. App. 1986) (plaintiffs and defendant entered into written employment agreements).

Plaintiffs are candid regarding their intent in asserting a breach of contract claim, stating that the breach of contract claim "is intended to provide a right of recovery to those victims of the time rounding who were involuntarily terminated and who cannot participate in the Rule 23 class

based upon the [IWPA] (which protects only current employees and those who voluntarily re-sign)." [Filing No. 45 at 34.]  But former employees who were involuntarily terminated have an avenue of recovery – the Indiana Wage Claims Statute, Ind. Code § 22-2-9-2.  The Indiana Wage Claims Statute, though, requires a former employee who was involuntarily terminated to "proceed through the Indiana commissioner of labor, who has the duty of investigating a claim and institut-ing an action on behalf of a claimant, whereas the [IWPA] permits a claimant to bring his or her own claim in 'any court having jurisdiction.'" *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011).

As this Court recently remarked in a similar case brought by the same plaintiffs' counsel – and as Plaintiffs here have tacitly acknowledged – the motivation behind Plaintiffs' breach of con-tract claim is to circumvent the procedural limitations in the Indiana Wage Claims Statute.  At bottom, Plaintiffs are attempting to use a theoretical breach of contract claim to include involun-tarily terminated employees in their class action, which is a method of recovery specifically fore-closed by the Indiana Wage Claims Statute.  Plaintiffs have cited no persuasive legal authority to support their novel strategy, and the Court will not recognize a breach of contract claim in this context.  And in any event, as discussed above, Plaintiffs do not sufficiently allege the specifics of any contract concerning payment of wages that allegedly existed between Union and its employ-ees.  For these reasons, Plaintiffs' breach of contract claim is dismissed.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Union's Motion to Dismiss, [Filing No. 42], to the extent that it dismisses Plaintiffs' FLSA minimum wage claims (both indi-vidually and on behalf of the collective action class) and dismisses Plaintiffs' breach of contract claims (both individually and on behalf of the Fed. R. Civ. P. 23 class).  The Court **DENIES IN**

- 18 -

**PART** Union's Motion to Dismiss, [Filing No. 42], to the extent that it finds that Plaintiffs have adequately alleged, at this stage of the litigation, that Union willfully violated the FLSA in connection with their FLSA overtime claims, and that Union acted in bad faith in connection with their IWPA claims.  The Court also **DENIES IN PART** Union's Motion to Dismiss, [Filing No. 42], to the extent that it denies Union's request to certify to the Indiana Supreme Court the question of which version of the IWPA applies to Plaintiffs' claims.

The following claims remain in this litigation:

·  FLSA overtime violations, individually and on behalf of a collective action class; and

·  IWPA violations, individually and on behalf of a putative Fed. R. Civ. P. 23 class.

The Court notes that the parties have been in contact with the Magistrate Judge regarding a schedule for the expeditious resolution of issues regarding whether this matter is appropriate for treatment as a combined class action and FLSA collective action.  The Court requests that the Magistrate Judge confer with the parties to address any effects of this Order on that schedule.

Date: February 10,  2016

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**