UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| AMY L. SCHNEIDER and JANET E. BRENEMAN, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| *vs.* | ) | No. 2:15-cv-00204-JMS-DKL |
| | ) | |
| UNION HOSPITAL, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Presently pending before the Court in this putative collective and class action brought under the Fair Labor Standards Act ("FLSA") and the Indiana Wage Payment Act ("IWPA") are: (1) a Motion to Certify Combined Class Action and FLSA Collective Action filed by Plaintiffs Amy Schneider and Janet Breneman, [Filing No. 78]; (2) a Motion for Approval of Class Action and Collective Action Notice filed by Plaintiffs, [Filing No. 80]; and (3) a Motion for Leave to Submit Surreply to Plaintiffs' Motion for Approval of Class Action and Collective Action Notice filed by Defendant Union Hospital, Inc. ("Union Hospital"), [Filing No. 96].

### I.
### BACKGROUND[1]

#### A.  Union Hospital and its Method of Paying Employees

Union Hospital currently employs over 1,800 hourly, non-exempt employees at its Terre Haute, Vigo County facility.  At Union Hospital, there are more than 100 different departments, with over 1,200 job categories.  [Filing No. 88-1 at 3; Filing No. 88-2.]  These departments include

---

[1] A portion of this background is taken from the Court's February 10, 2016 Order on Union Hospital's Motion to Dismiss.  [*See* Filing No. 64.]

Maintenance, Housekeeping, Respiratory Therapy, Cardiovascular Testing, Support Staff, Information Systems, and Medical Records, with the majority of Union Hospital's employees working in patient care areas such as Nursing.  [Filing No. 88-1 at 3; Filing No. 88-1 at 9.]

From 2003 through October 24, 2015, Union Hospital used software called Kronos to record employees' time.  [Filing No. 79-1; Filing No. 79-9 at 2-3.][2]  Employees used a specified telephone in his or her department to activate Kronos when they clock in and out.  [Filing No. 54 at 3.]  The location of the telephone varied by department – some employees had desk positions and could clock in from their desk, while others could clock in from a number of phones located within their department.  [See Filing No. 88-3 at 14; Filing No. 88-4 at 3-4.]  Any telephone at Union Hospital could be used to clock in, regardless of the department the employee worked in, and some employees would use phones outside of their department when clocking in despite Union Hospital's instruction not to do so.  [Filing No. 88-1 at 6-7.]  Further, some employees could manually adjust their own time entries, while others could not.  [Filing No. 88-1 at 4-5; Filing No. 88-3 at 31-32.]

From 2003 to October 24, 2015, Union Hospital paid its hourly employees for time worked in increments on one-tenth of an hour.  [Filing No. 54 at 4; Filing No. 88-1 at 4.]  When an employee clocked in, his or her time was rounded up to the nearest one-tenth of an hour, and when

---

[2] The Court notes that its Practices and Procedures clearly set forth in Appendix A how to cite to exhibits in a brief.  See http://www.insd.uscourts.gov/content/judge-jane-e-magnus-stinson.  The parties have not followed the Court's clear instruction, instead referring to exhibits by name and citing to their actual page numbers instead of their ECF page numbers.  For example, Plaintiffs cite to pages 6 to 7 of the deposition of Wayne Hutson as "Hutson FRCP 30(b)(6) Depo., pp. 6-7."  [See Filing No. 79 at 4.]  Instead, the citation should be "Filing No. 79-9 at 2-3," which corresponds to the ECF number of the document, and the ECF page numbers where the cited testimony appears.  The parties' failure to provide the form of citation the Court has set forth in its Practices and Procedures has made the Court's review of the pending motions unnecessarily cumbersome.  Counsel – some of whom practice frequently in this Court – are cautioned to comply with the Court's Practices and Procedures going forward in this and other cases.

an employee clocked out, his or her time was rounded down to the nearest one-tenth of an hour. [Filing No. 54 at 4.]  Union Hospital considered non-compensable time at the beginning and end of an employee's shift to be "a grace period…because that was reflective of [the employee's] practice…."  [Filing No. 88-1 at 4.]  This was based on "the practice of…employees based upon feedback from…leadership and managers who work[ed] with them."  [Filing No. 88-1 at 8.]

Union Hospital produced documents during discovery, which describe the manner in which Kronos kept track of employees' time:

Round Rule: 6-0 In & 6-5 Out

All in punches are rounded forward to the nearest tenth of an hour. If an employee clocks in between 6:55 and 7:00 the punch is rounded to 7:00 for payment.  If an employee clocks in between 7:01 and 7:06 the punch is rounded to 7:06 for payment. The Kronos time card will reflect the actual punch time. Punches are rounded in this manner regardless of scheduled shift start time.

Example a.

If an employee was scheduled to begin work at 7 a.m. and clocked in at 6:55, the punch would be rounded to 7:00 for payment.

Example b.

If an employee was scheduled to begin work at 7 a.m. and clocked in at 7:01, the punch would be rounded to 7:06 for payment.

All out punches are rounded backward to the nearest tenth of an hour. If an employee clocks out between 7:30 and 7:35 the punch is rounded to 7:30 for payment. If an employee clocks out between 7:36 and 7:42 the punch is rounded to 7:36 for payment.  The Kronos time card will reflect the actual punch time.

Example c.

If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:32 p.m., the punch would be rounded to 7:30 for payment.

Example d.

If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:37 p.m., the punch would be rounded to 7:36 for payment.

Example e.

   If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:26 p.m., the punch would be rounded to 7:24 for payment.

Example f.

   If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:20 p.m., the punch would be rounded to 7:18 for payment.

[Filing No. 79-1.]

   Beginning on October 25, 2015 and continuing to the present, Union Hospital changed its rounding system within Kronos to a system in which it rounded forward two minutes or backward three minutes to the nearest tenth. [Filing No. 79-2.] Union Hospital produced a document in discovery which describes the new rounding system:

Round Rule: 6-3

All punches in and out are rounded to the nearest tenth. Punches are rounded forward 2 minutes or backward 3 minutes to the nearest tenth. If an employee clocks in between 6:58 and 7:03 the punch is rounded to 7 for payment. If an employee clocks in between 7:04 and 7:09 the punch is rounded to 7:06 for payment. The Kronos time card will reflect the actual punch time.

Example a.

   If an employee was scheduled to begin work at 7 a.m. and clocked in at 6:55, the punch would be rounded to 6:54 for payment.

Example b.

   If an employee was scheduled to begin work at 7 a.m. and clocked in at 7:03, the punch would be rounded to 7:00 for payment.

Example c.

   If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:34 p.m., the punch would be rounded to 7:36 for payment.

Example d.

   If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:38 p.m., the punch would be rounded to 7:36 for payment.

Example e.

    If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:26 p.m., the punch would be rounded to 7:24 for payment.

Example f.

    If an employee was scheduled to end work at 7:30 p.m. and clocked out at 7:23 p.m., the punch would be rounded to 7:24 for payment.

[Filing No. 79-2.]

Union Hospital has advised that the Kronos time records for each hourly paid employee are the best and only records Union Hospital has to determine each employee's starting and ending time for each date he or she worked. [Filing No. 79-3 at 10-14; Filing No. 79-8 at 23-32.] Union Hospital does not have any documentation to indicate that it ever told its hourly employees that it was rounding the employees' time punches or paying employees for less time than recorded in the Kronos system, or that the clock-in and clock-out process had a built in "grace period." [Filing No. 79-3 at 4-7.] Union Hospital did not pay its employees based on the time they entered the building and the time they left; rather, it did not consider employees to be working until they had arrived in their "department" and clocked in on a specified telephone that activated the Kronos system. [Filing No. 79-3 at 14-19.] Union Hospital policy required that every hourly-paid employee's time records, for every shift and in every week, had to be reviewed and approved by his or her supervisor before they were sent to the Payroll Department and paychecks were generated. [Filing No. 79-3 at 20-22; Filing No. 79-8 at 32-40.]

**B. Union Hospital's Employee Handbook**

Union Hospital's Employee Handbook provides the following information regarding defining employee work time, the manner in which Union Hospital required employees to record their work time, and disciplinary rules relating to an employee's failure to comply with Union Hospital's timekeeping and tardiness policies:

**ABSENTEEISM AND TARDINESS**

*                    *                    *

Tardiness – Employees are expected to be at their workstation and ready to work at the time their shift begins; otherwise the employee typically will be considered to be tardy.  Unless hospitalized, on family medical leave, jury duty or workers compensation, employees are expected to call in on a daily basis for each day they will not be at work.

Guideline for disciplinary action:  Tardiness

- 5 instances in a rolling 6 months – verbal
- 6 instances in a rolling 6 months – written warning
- 7 instances in a rolling 6 months – suspension/termination

A pattern of tardiness over the course of employment is also subject to termination.

*                    *                    *

**HOURS OF WORK**

*                    *                    *

Employees are expected to be in their department and ready to work at the beginning of the shift.  (Example: an employee working 7 a.m. to 3:30 p.m. would be ready to work at 7 a.m.  7:01 is considered tardy.

*                    *                    *

**RECORDING TIME WORKED**

All hourly paid employees are required to accurately record their time personally by use of the specified phone in your department.  Time is not to be called in for or by others.  **Recording time for another employee or altering time is grounds for immediate dismissal.**

Unless authorized to begin work early by a supervisor, no employee should begin work or clock in more than five (5) minutes before start of the shift.  Similarly, unless authorized to work late by a supervisor no employee should continue working or clock out later than five (5) minutes after the end of the shift.  (Example: If shift is 7-3:30, the employee is expected to start work at 7 a.m. and complete the shift at 3:30 p.m.  Unless a supervisor authorizes otherwise, the employee should begin work and clock in between 6:55 a.m. and 7:00 a.m. and end work and clock out between 3:30 p.m. and 3:35 p.m.)

\*             \*             \*

Employees who leave Campus at anytime during a shift are to clock out and clock back in.  Campus is defined as any sidewalk adjacent to Union Hospital, Inc. owned property.

Employees must be paid for all hours worked and your Supervisor must approve all paid time.  If an error or omission has occurred when recording time, the employee has responsibility for completing the adjustments on the green correction form then returning the form to the immediate supervisor so that proper adjustment can be made or the error corrected.

[Filing No. 79-4 (emphasis in original).]

**CODE OF CONDUCT**

As a community, Union Hospital, Inc. has adopted a set of values.  Among these values are integrity and fairness among employees, physicians, volunteers and students.  This attitude of trust extends to our dealings with people outside the organization including patients and families as well as businesses.  We want to maintain the high standards of legal and ethical behavior that each Union Hospital, Inc. partner has shown for so many years. So, it is up to each of us to do the right thing – the good thing – every time we deal with anyone in our roles as a Union Hospital, Inc. representative.

\*             \*             \*

**WE ARE COMMITTED TO PREVENTING AND DETECTING FRAUD OR WRONGFUL ACTS**

If any of us thinks someone has committed fraud or taken a wrong action, we must report it.

Some, but not all examples of fraud or wrongful acts may include:

\*             \*             \*

- Receiving pay for hours not worked

\*             \*             \*

Employees found to have taken part in fraud or other wrongful acts will be disciplined.  In serious cases, this discipline could include termination, prosecution or both.

[Filing No. 79-6 (emphasis in original).]

- 7 -

**DISCIPLINARY ACTION**

*          *          *

Outlined below are types of behavior and conduct that Union considers inappropri-
ate and which violations may result in one or more disciplinary actions according
to the frequency, seriousness, and circumstances of the offense.  THIS LIST OF
VIOLATIONS IS NOT INTENDED TO BE ALL INCLUSIVE:

*          *          *

10.  Sleeping, wasting time, or loitering on premises during scheduled working
hours.

*          *          *

13.  Failure to record own time or altering or falsification of time records.

*          *          *

18.  Reporting late for work (tardy) or leaving work early from assigned depart-
ment/unit.

[Filing No. 79-7 (emphasis in original).]

### C.  Plaintiffs' Employment With Union Hospital

#### 1.  Ms. Schneider

Plaintiff Amy Schneider began working at Union Hospital in January 2008, and remained
employed there until May 2015, when she voluntarily ended her employment to accept a similar
position with a contracting company that performed work for Union Hospital.  [Filing No. 88-3 at
3; Filing No. 88-3 at 34.]  During her employment, Ms. Schneider was paid on an hourly basis and
treated as a non-exempt employee.  [Filing No. 54 at 2.]  From November 2011 until the end of
her employment, Ms. Schneider worked as an Office Coordinator in the Hospitalist Department.
[Filing No. 88-3 at 3; Filing No. 88-3 at 34.]  Ms. Schneider's principal job activities were func-
tions performed on her computer.  [Filing No. 88-3 at 12-13.]

Ms. Schneider testified that she punched in at the beginning of her shifts and immediately
started performing her primary work responsibilities, and would do so until she clocked out at the

end of her shift.  [Filing No. 88-3 at 15-16; Filing No. 88-3 at 23.]  Ms. Schneider did testify, however, that sometimes she would perform non-primary work activities right after clocking in, like grabbing a drink, going to the cafeteria, talking with coworkers, etc.  [Filing No. 88-3 at 16-22; Filing No. 88-3 at 25-26.]  Ms. Schneider had access to the Kronos system on her workstation computer, and could also alter her own time records.  [Filing No. 88-3 at 31-33.]

### 2.  Ms. Breneman

Plaintiff Janet Breneman began working for Union Hospital in January 2006 as a Nutrition Assistant in the Nutrition Catering Department, and remained employed there on a full time basis until Fall 2010, when she retired.  [Filing No. 88-6 at 3-4.]  She was then re-hired by Union Hospital in October 2011 on an hourly basis in the same position and department, and continued to work there until May 2015, when she voluntary resigned her employment.  [Filing No. 88-6 at 5-7.]  At all times during her employment with Union Hospital, Ms. Breneman was paid wages on an hourly basis and treated as a non-exempt employee.  [Filing No. 54 at 3.]  During her second period of employment with Union Hospital, Ms. Breneman did not have a set schedule, but worked on an "as needed" basis.  [Filing No. 88-6 at 8-9.]  As a Nutrition Assistant, Ms. Breneman stocked a supply cart in the hospital's lower level and travelled around to various kitchenettes through the hospital, and also worked in a coffee shop on the hospital's main level during the night shift.  [Filing No. 88-6 at 9-12.]

Ms. Breneman testified that she clocked in from two phones depending on what job function she was performing.  [Filing No. 88-6 at 16.]  When Ms. Breneman was working with the supply cart, she would clock in and immediately tend to the supply cart.  [Filing No. 88-6 at 13-14.]  When she was working at the coffee shop, Ms. Breneman would clock in and immediately

begin helping people.  [Filing No. 88-6 at 15.]  She would continue performing her job duties up until the time that she clocked out.  [Filing No. 88-6 at 19.]

### D.  Plaintiffs' Time Records

Plaintiffs provide the following summary of Ms. Schneider's time records, which Union Hospital does not dispute:

> Schneider's January 9, 2015 time entries show she clocked in at 6:49 and clocked out at 15:47, with total elapsed time on the clock of 8 hours and 58 minutes.  Union Hospital's records show Schneider was paid for 8.8 hours for the day, or 8 hours and 48 minutes.  Schneider lost 10 minutes of paid work time.  Her shift start time was rounded from 6:49 up to the one-tenth of an hour mark that favored Union Hospital, 6:54, and her shift end time was rounded from 15:47 down to the one-tenth of an hour mark that favored Union Hospital, 15:42.
>
> During the period from July 6, 2012 through her last day of employment, Schneider worked at least 681 shifts.  On 30 of those shifts, she clocked both in and out on precise one-tenth of an hour marks and was paid for her actual recorded work time.  On the remaining 651 shifts, Union Hospital rounded Schneider's time.  On all 651 occasions, Union Hospital rounded Schneider's time punches in its favor and [to] Schneider's detriment and paid her for less time than she worked and reported on the time system.  On zero occasions, Union Hospital rounded time in Schneider's favor.  For this period from July 6, 2012 to May 1, 2015, Union Hospital rounded and did not pay Schneider for at least 38.95 hours (2,337 minutes) of recorded work time.  Her hourly rate of pay during this period ranged from $18.02 to $18.75.  Calculated at her highest hourly rate, $18.75, Schneider would be owed wages of at least $730.31….
>
> As an FLSA unpaid overtime example, during calendar year 2015, Schneider's records show that she worked hours in excess of forty (40) hours and suffered unpaid wages due to rounding during at least the following work weeks (using first day of week and showing number of unpaid minutes due to rounding): 1/4/15 (18), 1/11/15 (17), 1/18/15 (5), 2/1/15 (9), 2/15/15 (10), 3/1/15 (12), 4/19/15 (9), 4/26/15 (10).  Schneider was not paid at least 1.5 hours (90 minutes) of earned and recorded overtime.  Her overtime rate of pay was at least $28.13.  For just that small period of time, Schneider's 2015 overtime damages would be at least $84.39 [1.5 hours x $28.13 x 2 (FLSA liquidated damages)].  Based upon the overall period of time from July 6, 2012 through May 1, 2015, Union Hospital's records show that Schneider was underpaid a total of at least 24.46 overtime hours.  At her highest overtime rate of pay, $28.13, Schneider was owed overtime wages of at least $688.06….

[Filing No. 79 at 9-10 (emphasis omitted) (citing Filing No. 79-12 and Filing No. 79-14).]

As to Ms. Breneman, Plaintiffs describe her time records as follows (which Union Hospital also does not dispute):

> Breneman does not have an unpaid overtime claim, but does have a claim for unpaid hours of work. Breneman's records show Union Hospital rounded Breneman's actual time punches in the hospital's favor on 331 of 333 shifts, on zero occasions in Breneman's favor, and on two occasions the hospital paid wages based upon actual time punches. From July 6, 2012 to April 26, 2015, Union Hospital underpaid Breneman for at least 33.65 hours (2,019 minutes). Her highest hourly rate of pay was $12.38. Limiting her wage claim to July 6, 2013 to October 24, 2015, Breneman was underpaid by at least 22.6 hours and was owed wages of at least $416.59.

[Filing No. 79 at 10-11 (citing Filing No. 79-13; Filing No. 79-14).]

### E.  Plaintiffs' Sample Size

The parties agreed, for purposes of class certification, to evaluate time records and payroll records for approximately 10% of the original proposed class. [*See* Filing No. 79 at 8.] Plaintiffs hired Dr. Dwight Steward, an economist and statistician, to evaluate the data, and he submitted an expert report. [Filing No. 79-11; Filing No. 79-14 at 5-6.] Dr. Steward analyzed the time and matching payroll records for 243 hourly-paid Union Hospital employees and, for the time period from July 6, 2013 to October 24, 2015, he found wage losses (at straight time) of $147,118 for those 243 employees. [Filing No. 79-11 at 3.] Dr. Steward projected this amount to the overall class of 2,451 plaintiffs and calculated that straight time wage losses class-wide would be $1,483,889.00 for that same time period. [Filing No. 79-11 at 3; Filing No. 79-11 at 11.]

Dr. Steward also studied the time and payroll records of the 243 employees for overtime losses. [*See* Filing No. 79-11 at 11.] He determined that for the same time period of July 6, 2013 to October 24, 2015, there were 1,585.50 hours of unpaid overtime. [Filing No. 79-11 at 11.] Dr. Steward did not calculate damages under the FLSA for failing to pay overtime for those hours. [Filing No. 79-11 at 11.]

### F. Union Hospital's Employee Interviews

Union Hospital's counsel "met with several Union Hospital hourly employees and interviewed them to discern information about their clocking procedures as well as their pre- and post-shift activities." [Filing No. 88 at 7 (citing Filing No. 88-7; Filing No. 88-8).] Union Hospital submitted declarations from the employees its counsel interviewed, who worked in various departments doing various types of work. [*See* Filing No. 88-9.] Union Hospital contends that the declarations show that:

- hourly employees were aware of the pay policy and practice in place at Union Hospital, as were their departmental co-workers;

- At least some of the employees viewed "the contested five minute pre- and post-shift periods as flexible windows during which they could clock in or out, understanding they would not be paid until the start of their shift";

- The employees were not required to work before the start of their scheduled shift or after the end of their scheduled shift, and there were no work-related reasons to report to work before their scheduled shifts;

- Many employees did not actually perform their first compensable work activity until sometime after their shift was scheduled to start, either due to the practice of the employee or due to the nature of the particular position;

- The timeframe between clocking in and beginning to work could differ between departments, and between individuals within a department, depending on the employee's job responsibilities;

- The gap between punching in and performing their principal work activities varied from two minutes to five minutes, or even up to 15 minutes;

- The gap between finishing work and clocking out also differed between departments, and between individuals within a department, depending on the individual's position; and

- The activities that filled the gap between clocking in and beginning work, and ending work and clocking out, varied by department, position, and employee.

[Filing No. 88 at 7-9.]

### G.  The Litigation

Plaintiffs initiated this lawsuit on July 6, 2015, [Filing No. 1], and filed the operative First Amended Combined Class Action and Collective Action Complaint for Damages (the "Complaint") on November 5, 2015, [Filing No. 54].  Plaintiffs asserted claims against Union Hospital on behalf of themselves and all similarly-situated current and former employees of Union Hospital who "were similarly denied payment of wages and overtime compensation under Union Hospital's compensation scheme that involved the manipulation of time records and the failure to pay wages for work at the beginning and the end of Union Hospital's employees' shifts." [Filing No. 54 at 10.] Specifically, Plaintiffs asserted claims for: (1) violation of the FLSA for failing to pay minimum wages and overtime wages as required by the FLSA, on behalf of all similarly situated current and former Union Hospital employees; (2) violation of the IWPA, Ind. Code § 22-2-5, on behalf of all current Union Hospital employees or former Union Hospital employees who voluntarily resigned from employment; and (3) breach of contract on behalf of all current and former Union Hospital employees.  [Filing No. 54 at 13-16.]

Union Hospital filed a Motion for 12(b) Partial Dismissal of the Amended Complaint and Certification of State Law Question, [Filing No. 42], and the Court granted the motion in part to the extent it dismissed Plaintiffs' FLSA minimum wage claims (both individually and on behalf of the collective action class) and dismissed Plaintiffs' breach of contract claims (both individually and on behalf of the Fed. R. Civ. P. 23 class).  [Filing No. 64 at 18.]  The Court denied the motion in part to the extent that it found that Plaintiffs had adequately alleged, at the motion to dismiss stage of the litigation, that Union Hospital willfully violated the FLSA in connection with their FLSA overtime claims, and that Union Hospital acted in bad faith in connection with their IWPA claims.  [Filing No. 64 at 18-19.]  The Court also denied the motion in part to the extent that it

denied Union Hospital's request to certify to the Indiana Supreme Court the question of which version of the IWPA applies to Plaintiffs' claims.  [Filing No. 64 at 19].  This ruling left the following claims at play in the litigation: (1) FLSA overtime violations, individually and on behalf of a collective action class; and (2) IWPA violations, individually and on behalf of a putative Fed. R. Civ. P. 23 class.  [Filing No. 64 at 19.]

Plaintiffs' Motion to Certify Combined Class Action and FLSA Collective Action, [Filing No. 78], their Motion for Approval of Class Action and Collective Action Notice, [Filing No. 80], and Union Hospital's Motion for Leave to Submit Surreply to Plaintiffs' Motion for Approval of Class Action and Collective Action Notice, [Filing No. 96], and now fully briefed and ripe for the Court's consideration.

## II.
### PLAINTIFFS' MOTION TO CERTIFY

At the outset, the Court notes the Seventh Circuit Court of Appeal's instruction that "employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)."  *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 973-74 (7th Cir. 2011).  *See also Robertson v. Steamgard*, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("the Seventh Circuit has held that the FLSA is 'amenable to state-law claims for related relief in the same federal proceeding'").  This Court will heed that instruction, and finds it proper that Plaintiffs have brought, and seek certification of, both their FLSA claims and their IWPA claims in the same litigation.

### A.  Conditional Certification of FLSA Collective Action Claims

#### 1.  Collective Action Certification Standard

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compen-

sation may be brought "by any one or more employees for and in behalf of himself or themselves

and other employees similarly situated." 29 U.S.C. § 216(b).  A collective action differs signifi-

cantly from a class action brought pursuant to Federal Rule of Civil Procedure 23.  The primary

difference is that plaintiffs who wish to be included in a collective action must affirmatively opt

in by filing a written consent with the Court, while members of a Rule 23 action are automatically

included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir.

2010).  Accordingly, Rule 23 and its standards governing class certification do not apply to a

collective action brought under the FLSA.

An employee may only bring a collective action on behalf of other employees who are

similarly situated. 29 U.S.C. § 216(b).  Therefore, to decide whether to initially certify a collective

action, the Court must determine whether members of the proposed class are, in fact, similarly

situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *3-4 (S.D. Ind. 2010).

Courts within this Circuit typically use a two-step inquiry. *Scott v. NOW Courier, Inc.*, 2012 WL

1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Ro Inc.*, 2010 WL 2640271, *1 (S.D. Ind. 2010).

The first step, also known as the notice stage, involves analysis of the pleadings and affi-

davits that have been submitted to determine whether notice should be given to potential class

members. *Campbell*, 2010 WL 3326752 at *3.  Although the first step of certification does not

impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing' is a

mere formality." *Id.* at *4.  It serves as an important and functional step in the certification process

because "it would be a waste of the Court's and the litigants' time and resources to notify a large

and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, *4 (E.D. Wis. 2008)* (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id.* at *3. Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 WL 3259346, *1 (N.D. Ind. 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752 at *3-4; *Alvarez*, 605 F.3d at 449.

When a plaintiff seeks conditional certification of an FLSA class after significant discovery, the court can "'collapse the two stages of the analysis and deny certification outright.'" *Armstrong v. Wheeels Assured Delivery Systems, Inc.*, 2016 WL 1270208, *5 (S.D. Ind. 2016) (quoting *Purdham v. Fairfax County Pub. Schs.*, 629 F.Supp.2d 544, 547 (E.D. Va. 2009)). At this in-between stage, when substantial discovery has taken place – and where the Court believes the

parties here currently find themselves[3] – an intermediate level of scrutiny is applied. *Scott*, 2012 WL 1072751 at *7-8. Accordingly, the Court will consider whether Plaintiffs have presented evidence which supports a finding that they are similarly situated to putative class members.

### 2. Discussion

Plaintiffs seek conditional certification of the following FLSA class:

> Present and former hourly paid Union Hospital employees who worked at any time from July 6, 2012 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid overtime compensation on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

[Filing No. 79 at 11.] Plaintiffs assert that these collective action class members are similarly situated to Ms. Schneider. [Filing No. 79 at 11.]

Plaintiffs state that they will limit their proof of Union Hospital's wage violations to "Union Hospital's own time records and pay roll records which show each instance of unpaid time based upon improper and non-neutral time card rounding." [Filing No. 79 at 12.] Plaintiffs contend that they are relying on the FLSA's requirement that "employers make, keep, and preserve records of the individuals they employ and their wages, hours, and other conditions of employment." [Filing No. 79 at 12-13.] They argue that Plaintiffs are similar situated to the collective action class members to the extent Union Hospital's own records identify those employees who were victims of the FLSA violations. [Filing No. 79 at 13.] Plaintiffs assert that it is an employer's responsibility to comply with the FLSA's recordkeeping requirements, that the responsibility cannot be delegated to an employee, and that an employer cannot blame inadequate records for failing to comply. [Filing No. 79 at 14.] Plaintiffs acknowledge that while it is not *per se* illegal to round

---

[3] The Court notes that, in briefing the pending motions, the parties rely upon excerpts from eight depositions, including some depositions of Union Hospital's 30(b)(6) witnesses, four affidavits, eleven declarations, an expert report, and Union Hospital's Initial Disclosures.

time clock entries, it is illegal if the rounding always benefits the employer and always harms the employee. [Filing No. 79 at 14-15.] Plaintiffs note that this case does not involve a neutral rounding policy, but rather one where Union Hospital always receives the advantage. [Filing No. 79 at 15.] Plaintiffs point to Union Hospital's admission through discovery that it rounded every hourly-paid employees' time entries in the manner Plaintiffs have alleged, and the fact that Union Hospital's own time records support Plaintiff's conclusion that Union Hospital "would have paid its employees $1,483,889.00 more in wages if the employees had been paid for their actual recorded work time instead of the rounded time." [Filing No. 79 at 17-18.]

Union Hospital responds that rounding is an acceptable practice under the FLSA, so long as employees are compensated for the time they actually work. [Filing No. 88 at 11.] Relying on several declarations from employees, it argues that certification is not appropriate because there are different departments within the hospital, with different positions within each department, and the pre- and post-shift activities and time spent on those activities vary from employee to employee. [Filing No. 88 at 12.] Union Hospital argues that these differences preclude certification because "the answer to the question of whether these employees were required or permitted to perform work during the five minute pre- and post-shift grace periods cannot be the same for the proposed class." [Filing No. 88 at 13.] Union Hospital focuses on cases involving employers requiring their employees to perform certain pre- and post-shift work that was uncompensated. [Filing No. 88 at 14.] It points to its handbook provisions and argues that "none of these documents indicates that employees were required to clock in five minutes before their shift start time or five minutes after their shift end time, or that they were directed to work during the five minutes prior to their shift or in the five minutes after the end of their shift." [Filing No. 88 at 15.] Union Hospital argues that Plaintiffs' expert never confirmed that employees in the sample size he studied

performed compensable activities for the entire time from punch in to punch out.  [Filing No. 88 at 17.]

On reply, Plaintiffs argue that Union Hospital admits it applied a rounding system that always benefitted Union Hospital, and represented through its 30(b)(6) witnesses that its Kronos time records and corresponding payroll records were the best and only evidence available of the dates and actual hours (time in and time out) each employee worked.  [Filing No. 91 at 3.]  Plaintiffs also contend that all of Union Hospital's written policies define time recorded in the Kronos timekeeping system as time "worked," and that Union Hospital has not produced any written policies reflecting that it told its employees it was rounding time entries in Union Hospital's favor, or that it was rounding time entries because it thought employees may not be "working" for a portion of their work day recorded in Kronos.  [Filing No. 91 at 3-4.]  Plaintiffs argue that Union Hospital did not respond to their arguments regarding recordkeeping obligations under the FLSA, and reiterate those arguments.  [Filing No. 91 at 10-11.]  They contend that the Kronos records are records of "work," as required by the FLSA.  [Filing No. 91 at 12-13.]  Additionally, Plaintiffs attempt to distinguish cases relied upon by Union Hospital, which they assert involved different types of FLSA violations.  [Filing No. 91 at 19.]

The FLSA provides the following regarding an employer's duty to keep timekeeping records:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder….

29 U.S.C. § 211(c).

An employer's use of rounding practices or policies to determine an employee's compensable hours is not *per se* prohibited by the FLSA.  *See* 29 C.F.R. § 785.48(b) ("It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour.  Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work").  Rounding may not be used, however, if it "is used in such a manner that it…result[s], over a period of time, in failure to compensate the employees properly for all the time they have actually worked."  *Id.*

Plaintiffs have set forth sufficient evidence to show that Union Hospital's rounding policy and practice was improper.  They presented data from a sample size which indicates that from July 6, 2013 to October 24, 2015, Union Hospital failed to compensate employees in the sample group for 1,585.5 hours of unpaid overtime.  [Filing No. 79 at 8-9; Filing No. 79-11 at 11.]  The data from the sample size also indicates that Union Hospital always benefitted from the rounding policy, and the employees never did.  [Filing No. 79-11 at 3.]  Moreover, Union Hospital's own written documents, including Kronos documentation and the Union Hospital employee handbook, confirm the nature of the rounding policy and consistently equate the time period between clocking in and clocking out on Kronos as time "worked."  [*See, e.g.*, Filing No. 79-4.]

Union Hospital's only real response to Plaintiffs' arguments regarding its rounding policy is that the rounding policy was intended to provide a "grace period" both at the beginning and end of an employee's shift, when the employee could spend time "grabbing coffee, waiting, socializing, using the restroom, walking to supplies, handling personal phone messages, waiting to receive or give change over report, putting away personal belongings, changing clothes, gathering personal belongings, and the like."  [Filing No. 88 at 12-13.]  Union Hospital essentially argues that because

some employees spent time engaging in those activities during the first five minutes after clocking in on the Kronos system, and during the last five minutes before clocking out, they were not entitled to be compensated for that time anyway, so the rounding system did not adversely affect them. Accordingly, Union Hospital argues, these variances in employees' habits during the five minutes post-clock-in and the last five minutes pre-clock-out preclude certification. [Filing No. 88 at 12-16.]

There are several problems with Union Hospital's argument. First, this case is about rounding procedures and not about pre- and post-shift activities (as other FLSA cases cited by Union Hospital have been, such as *Hawkins v. Alorica*, 287 F.R.D. 431 (S.D. Ind. 2012)). While there may be differences in what employees do immediately after clocking in and immediately before clocking out, those differences do nothing to refute the evidence Plaintiffs have presented – and Union Hospital has not disputed – that unequivocally shows that the rounding policy always benefitted Union Hospital and never benefitted its employees. Second, Union Hospital's own records do not bear out Union Hospital's argument that the rounding policy was intended to provide a "grace period" so that employees could perform non work-related activities during the few minutes after clocking in and the few minutes before clocking out. Union Hospital has not presented any written documentation in which these "grace periods" are discussed. Finally, Union Hospital's own 30(b)(6) witnesses testified that the Kronos time records are the best and only evidence of the dates employees worked, and the work start times and work end times for those employees. [*See, e.g.*, Filing No. 79-8 at 25.] The only evidence Union Hospital has presented are employee declarations created post-litigation. [Filing No. 88-9.]

The Court finds the Kronos time records for the sample size to be more credible evidence of the effect Union Hospital's rounding policy had on its employees.  Indeed, the employee declarations do not speak to the effect of the rounding policy at all, but only to whether every employee settled right down to work immediately after clocking in and worked up until clocking out.  This evidence may eventually bear on the issue of the amount of damages those employees are entitled to, but is not relevant to the issue at hand – whether Plaintiffs have shown Union Hospital maintained a common policy or practice that violated the FLSA.  *See Binissia v. ABM Industries, Inc.*, 2014 WL 793111, *5 (N.D. Ill. 2014)* ("ABM's arguments about differences among the prospective plaintiffs are more appropriately dealt with at the second stage of the collective action process, after discovery has been completed and the court is better-positioned to assess whether the plaintiffs are similarly situated.  At this stage, it is sufficient that Plaintiffs have shown that ABM has a rounding policy that applied uniformly to all potential plaintiffs and the policy appears to be inconsistent with FLSA regulations"); *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F.Supp.2d 745, 757 (N.D. Ill. 2011) (individual inquiries regarding whether employees actually "worked" for the entire time that they were clocked in were "not sufficient to preclude certification at stage one of the analysis").

The Court finds that conditional certification of Plaintiffs' FLSA collective action claim is appropriate here.  While not making a determination based on the merits, the Court finds that Plaintiffs have made the necessary "modest factual showing" that Union Hospital maintains a common policy or practice that violates the FLSA.  *Campbell*, 2010 WL 3326752 at *4.  Accordingly, the Court grants Plaintiffs' motion as it relates to conditional certification of the FLSA collective action.  The Court notes that only Ms. Schneider is the representative plaintiff for the FLSA collective action, as Plaintiffs only assert that Ms. Schneider is similarly situated to the collective

- 22 -

action class members, and also state that Ms. Breneman does not have an unpaid overtime claim. [*See* Filing No. 79 at 10-11 ("Breneman does not have an unpaid overtime claim" and "[t]he members of the above-described collective class are 'similarly situated' to the class representative, Amy Schneider").]

### B.  Certification of IWPA Claims Under Rule 23

In deciding whether to certify a class, the Court may not blithely accept as true even the well-pleaded allegations of the complaint but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).  Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a).  If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

It is the plaintiff's burden to prove first that an identifiable class exists that merits certification under Federal Rule of Civil Procedure 23(a). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all its members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

Plaintiffs seek certification of the following class under the IWPA:

> Present and former hourly paid Union Hospital employees who worked at any time from July 6, 2013 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid regular wages on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

[Filing No. 79 at 11.]

### 1. Rule 23(a) Analysis

Plaintiffs argue that their class meets all four requirements of Rule 23(a). Specifically, Plaintiffs first contend that the numerosity requirement is satisfied because Union Hospital has identified 2,451 hourly paid employees who worked at Union Hospital between July 6, 2013 and October 24, 2015, and all hourly paid employees were subjected to the same time rounding and wage reduction practices and policies. [Filing No. 79 at 24-25.] Second, Plaintiffs argue that the commonality requirement is satisfied because a common question exists for all class members: "is Union Hospital liable under the FLSA and the [IWPA] for underpaying wages by systematically rounding employee time records in a way that only favors the hospital?" [Filing No. 79 at 25-26.] Third, Plaintiffs assert that their claims are typical of the class because they were all subject to the same time-rounding scheme. [Filing No. 79 at 26-28.] Finally, Plaintiff contend that they are adequate class representatives, and that their counsel is adequate as well. [Filing No. 79 at 28-29.]

The Supreme Court has instructed that the district court must perform a "rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied because "'actual, not presumed, conformance with Rule 23(a) remains…indispensable.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Gen. Tel. Co.*, 457 U.S. at 160). Union Hospital does not appear to challenge Plaintiffs' ability to satisfy the numerosity or adequacy of representation requirements, but argues that they cannot satisfy the commonality or typicality requirements.

a.  Numerosity

First, the Court finds that Plaintiffs have met the numerosity requirement.  They present evidence that Union Hospital has identified 2,451 hourly paid employees who worked for it between July 6, 2013 and October 24, 2015, [Filing No. 79-14], and it is undisputed that all hourly paid employees were subjected to the same rounding scheme.  Union Hospital possesses the data relevant to the numerosity issue and since it has not challenged numerosity, the Court will not either.  *See, e.g.*, *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present…. Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief").

b.  Commonality and Typicality

Second and third, as to commonality and typicality, Plaintiffs argue that commonality is satisfied because the common question in this case is whether Union Hospital is liable under the FLSA and the IWPA for underpaying wages by systematically rounding employee time records in a way that only favors Union Hospital.  [Filing No. 79 at 25-26.]  They also assert that their claims are typical of the class because they and all of the class members were subject to the same time rounding scheme.  [Filing No. 79 at 27.]

Union Hospital argues that the declarations of various employees it submitted indicate that practices among employees varied in terms of whether they performed compensable work for the entire time that they were clocked in.  [Filing No. 88 at 21.]  Specifically, they argue that commonality is not satisfied because "[e]ach individual, depending on his department or position, performed different activities around the clock-in and clock-out timeframe for his shift," and "[d]etermining what those activities were and whether they were compensable would make for a laborious

series of mini trials." [Filing No. 88 at 21.]  Union Hospital also argues that Plaintiffs' claims are not typical of the class because "different departments and different job positions tend to have variable employment circumstances and variable pre- and post-shift routines.  Depending on the department and job position of a particular employee, the employee may not be able to clock in from her desk, may not be able to adjust her own time entries, may have to do patient change over report, may change clothes while clocked in, may engage in department or position-specific activities prior to scheduled shift start time, and may have received other directives from managers regarding when they are to return to their department phones for clocking out." [Filing No. 88 at 23-24.]

On reply, Plaintiffs argue that whether employees were performing compensable work during the "grace periods" that Union Hospital defines is irrelevant to the class certification analysis. [Filing No. 91 at 16-19.]  They reiterate their arguments that both commonality and typicality have been satisfied.  [Filing No. 91 at 14-20.]

A class action requires "questions of law or fact common to the class," and the plaintiff's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3).  Commonality is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of [the] case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted).  All questions of fact or law need not be identical; rather the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009).  The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence." *Gen. Tel. Co.*, 457 U.S. at 158 n.13.  Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

The Court finds that Plaintiffs have satisfied the commonality requirement.  The common issue in this case is whether Union Hospital's rounding policy – which was uniformly applied – violates the IWPA by rounding in such a way that only benefits Union Hospital.  *See Nicholson v. UTi Worldwide, Inc.*, 2011 WL 1775726, *5 (S.D. Ill. 2011) ("The case at bar presents common questions of law and fact regarding the implementation of [defendant's] time-clock rounding…polic[y] and whether [that policy] resulted in its forklift operators working…without being paid properly for that work time").

Additionally, the Court finds that Plaintiffs have satisfied the typicality requirement.  The Court rejects Union Hospital's attempt to shift the focus of this case to whether its employees were performing compensable work for the entire time that they were clocked in.  As discussed above, this case is about Union Hospital's uniform rounding policy, and Union Hospital has not presented any evidence that it affected employees differently.  To the contrary, Union Hospital does not dispute that the time records it produced for the sample size indicate that Union Hospital benefitted from the rounding policy in every instance, and has not produced any evidence of an instance where the rounding policy benefitted an employee.  Whether or not the employees were performing compensable work during the entire time that they were clocked in may go toward the issue of damages, but does not create a factual difference that defeats class certification.  Plaintiffs and the class members were all full time, hourly–paid employees who were required to clock in at the

beginning of their shift and out at the end of their shift, and who were all subject to the same rounding policy.  Plaintiffs have sufficiently demonstrated that their claims are typical of the claims of the putative class members.

> ### c.   Adequacy of Representation

Like numerosity, Union Hospital does not challenge the adequacy of representation requirement.  [*See* Filing No. 88 at 19 ("Union Hospital specifically focuses on the requirements of Rule 23(a)(2) 'commonality' and Rule 23(a)(3) 'typicality'").]  The Court is required to find whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted).  To adequately represent the class, the representative plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted).

The Court finds the requirement of adequacy of representation is met.  Plaintiffs have sufficiently demonstrated that they share the same interests and suffered the same injuries as the injuries suffered by the putative class members.  Plaintiffs have also demonstrated that their counsel is competent and motivated to litigate this case, and has extensive experience with previous class actions.

Plaintiffs have met the four prerequisites of Rule 23(a) – the class is so numerous that joinder of all its members is impracticable, there are questions of law or fact common to the class,

the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

        2. *Rule 23(b) Analysis*

Plaintiffs argue that they meet the requirements of Rule 23(b)(3) because "[t]he most significant factual issue is whether Union Hospital utilizes a non-neutral method of time record rounding whereby Union Hospital rounds actual time entries in its favor and to its employees' detriment, resulting in an underpayment of wages," and "[t]he most significant legal issue is whether or not Union Hospital was permitted by Indiana law and/or the FLSA to ignore its time records and round time entries in a way that resulted in its payment of lower wages to its employees." [Filing No. 79 at 30-31.] Plaintiffs argue that these issues predominate over any other issues, including the issue of damages for each class member. [Filing No. 79 at 30-31.] Plaintiffs also contend that a class action is the superior method of adjudicating the claims at issue here. [Filing No. 79 at 31-32.]

Union Hospital relies on many of the same arguments it asserted in arguing that Plaintiffs could not satisfy the commonality and typicality requirements, contending that individualized issues relating to whether class members performed compensable work "during the gap between their time clock punches and scheduled shift start and stop times" would predominate over any common issues. [Filing No. 88 at 24-26.] Union Hospital argues that "punch in and punch out records do not automatically equate to time spent working, nor do they put the employer on notice that work is being performed." [Filing No. 88 at 28.] It asserts that it "has demonstrated that it did not require employees to punch in until their scheduled start time, that employees were generally aware they would be paid based on scheduled shift times, and that employees were not directed to work off the clock." [Filing No. 88 at 30.]

On reply, Plaintiffs again argue that class certification should be based only on Union Hospital's rounding policy, and that Union Hospital cites inapposite cases in response to Plaintiffs' motion. [Filing No. 91 at 18-19.]

Under Rule 23(b)(3), a class action may be maintained if the prerequisites of Rule 23(a) are satisfied and if the Court finds that the questions of law or fact common to class members predominate over any questions affecting individual class members, and that a class action is superior to other available methods of adjudicating the controversy. Courts consider:

> (A)The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and Rule 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate.'" *Mejdreck v. Lockformer Co.*, 2002 WL 1838141, *6 (N.D. Ill. 2002) (quoting *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1419 (N.D. Ill. 1996)).

Having already found that Plaintiffs have satisfied the commonality prerequisite of Rule 23(a)(2), the Court concludes that Union Hospital's alleged policy of systematically rounding its employees' hours in a way that always benefitted Union Hospital predominates over any individualized issues that might exist. Further, because of this, a class action is the superior method of adjudicating the claims of Plaintiffs and the class members. The Court grants Plaintiffs' Motion to Certify the IWPA class. The Court notes, however, that because the IWPA does not apply to employees whose employment was involuntarily terminated, the class will consist only of current

- 30 -

employees and former employees who voluntarily terminated their employment.[4]

In sum, The Court **GRANTS** Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 78], to the extent that the Court **CONDITIONALLY CERTIFIES** the following class under the FLSA:

> Present and former hourly paid Union Hospital employees who worked at any time from July 6, 2012 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid overtime compensation on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

The Court also **GRANTS IN PART** Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 78], to the extent that it **CERTIFIES** under Rule 23 the following class under the IWPA:

> Present hourly paid Union Hospital employees and former hourly paid Union Hospital employees who voluntarily terminated their employment, who worked at any time from July 6, 2013 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid regular wages on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

Moreover, the Court **DESIGNATES** Amy Schneider as representative for the FLSA collective action, and **DESIGNATES** Amy Schneider and Janet Breneman as representatives for the Rule 23 class action.  The Court further **DESIGNATES** Robert P. Kondras, Jr. of Hunt, Hassler & Lorenz, LLP as lead class counsel pursuant to Fed. R. Civ. P. 23(g).

---

[4] The Court rejects Union Hospital's argument that Plaintiffs' proposed class is overly broad due to differences in job requirements, responsibilities, and practices, and that Plaintiffs should have proposed subclasses.  [Filing No. 88 at 30-31.]  The Court has found that any differences related to whether employees performed compensable work for the entire time that they were clocked in are not relevant to whether a class based on Union Hospital's rounding policy should be certified. Accordingly, no subclasses are needed at this time.

### III.
##### PLAINTIFFS' MOTION FOR APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION NOTICE

Plaintiffs have filed a Motion for Approval of Class Action and Collective Action Notice, requesting that the Court approve their Proposed Notice, [*see* Filing No. 80-1], and approve their schedule for sending out the Proposed Notice, [*see* Filing No. 80 at 5]. Union Hospital sets forth several objections to the Proposed Notice, which the Court has considered along with Plaintiffs' responses to those objections. [*See* Filing No. 89; Filing No. 92.]

The Court notes at the outset that Union Hospital filed its "Notice of Objection to Plaintiffs' Proposed Class Action and Collective Action Notice" over two months after Plaintiffs filed their Motion for Approval of Class Action and Collective Action Notice. [Filing No. 89.] The "Notice of Objection" is a response to Plaintiffs' motion, and was not timely filed. The Court presumes that Union Hospital believed it had extra time to respond to the motion because it received an extension of time until July 15, 2016 to file its response to Plaintiffs' certification motion. [*See* Filing No. 82.] The Order granting Union Hospital's response for an extension did not include an extension for responding to the Motion for Approval and, in any event, the extension for Union Hospital's response to the certification motion was only until July 15, 2016. [Filing No. 82.] Union Hospital filed its Notice of Objection on July 20, 2016. [Filing No. 89.] Union Hospital and its counsel are cautioned that the Court expects and requires strict compliance with deadlines.

Because it prefers to decide issues on the merits, however, the Court has considered Union Hospital's objections. Consequently, because Union Hospital's proposed surreply deals exclusively with the issue of the timing of its objections, and since the Court has considered Union Hospital's objections despite their untimeliness, the Court **DENIES AS MOOT** Union Hospital's

Motion for Leave to Submit Surreply to Plaintiffs' Motion for Approval of Class Action and Collective Action Notice. [Filing No. 96.][5]

After reviewing Union Hospital's objections and Plaintiffs' responses thereto, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Approval, [Filing No. 80]. Given that both parties express familiarity with the Court's approved notice in *Weil v. Metal Technologies, Inc.*, 2:15-cv-00016-JMS-DKL at dkts. 92-1, 92-2, and 92-3, the Court **ORDERS** the parties to confer, and to revise the Class Action and Collective Action Notice and the Notice of Consent to Become a Party Plaintiff in a Collective Action Under the Fair Labor Standards Act so that they contain the same provisions, and reflect the same timing, as the notices the Court approved in *Weil*. The Notice must also include a Request by Class Member to Opt Out From Class Action form that is substantially the same as the request the Court approved in *Weil*. [*See Weil*, 2:15-cv-00016-JMS-DKL at dkt. 92-3.] In order to prevent an administrative burden on the Court that resulted from the *Weil* notice procedure, however, the Notice in this case must include the following language directly after the Court's address in paragraph 6 of Plaintiffs' proposed notice:

> The Clerk's office will docket a weekly notice of all "Request by Class Member to be Excluded from Class Action" identifying the date received and the name of the individual. Each executed request and corresponding envelope will be attached to the weekly notice on the docket.

Additionally, the Notice in this case must include the following language directly after Plaintiffs' counsel's address in paragraph 6 of the proposed notice:

---

[5] Union Hospital states in a footnote that its Notice of Objection is "a non-exhaustive list, subject to supplementation in the contemplated substantive response." [Filing No. 89 at 1.] Union Hospital's time for responding to Plaintiffs' Motion for Approval has passed, and it should have asserted all of its objections in a timely fashion.

Plaintiffs' Counsel will docket a weekly notice of all "Notice of Consent to Become a Party Plaintiff in a Collective Action Under the Fair Labor Standards Act" identifying the date received and the name of the individual.  Each executed notice and corresponding envelope will be attached to the weekly notice on the docket.

The parties should endeavor to reach agreement regarding the provisions in the Notice, the Notice of Consent, and the Request to Opt Out.  The parties are directed to either file an agreed notice, or competing notices by **October 31, 2016**.

## IV.
### CONCLUSION

For the foregoing reasons, The Court **GRANTS** Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 78], to the extent that it **CONDITIONALLY CERTIFIES** the following class under the FLSA:

> Present and former hourly paid Union Hospital employees who worked at any time from July 6, 2012 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid overtime compensation on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

The Court also **GRANTS IN PART** Plaintiffs' Motion to Certify a Combined Class Action and FLSA Collective Action, [Filing No. 78], to the extent that it **CERTIFIES** under Rule 23 the following class under the IWPA:

> Present hourly paid Union Hospital employees and former hourly paid Union Hospital employees who voluntarily terminated their employment, who worked at any time from July 6, 2013 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid regular wages on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

Moreover, the Court **DESIGNATES** Amy Schneider as representative for the FLSA collective action, and **DESIGNATES** Amy Schneider and Janet Breneman as representatives for the Rule 23 class action.  The Court further **DESIGNATES** Robert P. Kondras, Jr. of Hunt, Hassler & Lorenz, LLP as lead class counsel pursuant to Fed. R. Civ. P. 23(g).

Further, the Court **GRANTIS IN PART AND DENIES IN PART** Plaintiffs' Motion for Approval of Class Action and Collective Action Notice filed by Plaintiffs, [Filing No. 80], as set forth above, and **DENIES AS MOOT** Union Hospital's Motion for Leave to Submit Surreply to Plaintiffs' Motion for Approval of Class Action and Collective Action Notice, [Filing No. 96]. The Court **ORDERS** the parties to file an agreed notice or competing notices to the class by **October 31, 2016** as set forth above.

10/14/2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**