UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AMY L. SCHNEIDER and<br>JANET E. BRENEMAN, individually<br>and on behalf of others similarly situated,<br><br>Plaintiffs<br><br>vs.<br><br>UNION HOSPITAL, INC.,<br><br>Defendants | ) CLASS ACTION COMPLAINT<br>)<br>) FLSA COLLECTIVE ACTION<br>) COMPLAINT UNDER<br>) 29 USC § 216(b)<br>)<br>) CASE NO. 2:15-cv-00204-JMS-DKL<br>)<br>)<br>)<br>)<br>) |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made by and between plaintiffs Amy L. Schneider, Janet E. Breneman, and Sarah J. Geraci on behalf of themselves and the Classes (as hereinafter defined), and defendant Union Hospital, Inc.. This Agreement fully and finally compromises and settles any and all claims that were or could have been asserted in the lawsuit styled as *Schneider and Breneman v. Union Hospital, Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind.), or the lawsuit styled as *Geraci v. Union Hospital, Inc.*, Case No. 2:16-cv-00207-JMS-DKL (S.D. Ind.) (collectively, the "Actions").

WHEREAS, on July 6, 2015, Amy L. Schneider and Janet E. Breneman filed a combined class action and FLSA collective action lawsuit, styled as *Schneider and Breneman v. Union Hospital, Inc.*, Case No. 2:15-cv-00204-JMS-DKL in the U.S. District Court for the Southern District of Indiana, Terre Haute Division.

WHEREAS, Amy L. Schneider and Janet E. Breneman filed a Motion to Certify a Combined Class Action and FLSA Collective Action, which was granted by the Court on October 14, 2016. See Docket Entry 102.

WHEREAS, on June 10, 2016, Sarah J. Geraci filed a combined class action and FLSA collective action lawsuit, styled as *Geraci v. Union Hospital, Inc.*, Case No. 2:16-cv-00207-JMS-DKL in the U.S. District Court for the Southern District of Indiana, Terre Haute Division. The *Geraci* case was consolidated with the *Schneider* case on December 19, 2016. See *Schneider* Docket Entry 114.

WHEREAS, Sarah J. Geraci has yet to file a Motion to Certify a Combined Class Action and FLSA Collective Action. However, the Parties agree that the putative *Geraci* class action and FLSA collective action will be deemed certified for this Agreement and settlement purposes only.

WHEREAS, the Parties (as hereinafter defined) engaged in extensive discovery over the

1

course of the *Schneider* action. The same discovery is applicable to the *Geraci* action.

WHEREAS, the Parties engaged in a settlement conference, and reached an agreement, on November 22, 2016.

WHEREAS, Class Counsel and the Defendant have conducted investigations relating to the claims and the underlying events and transactions alleged in the Actions, have analyzed the evidence adduced during pretrial discovery, and have researched the applicable law, with respect to Plaintiffs' claims against Defendant and the potential defenses thereto.

WHEREAS, the Court has not ruled on the merits of the Actions.

WHEREAS, Defendant denies any wrongdoing, violation of any law, or failure to pay any owed wages, whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Defendant with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any defenses that the Defendants have asserted or would assert.

WHEREAS, the Parties have determined that a resolution of the Actions is advisable from the point of view of all Parties.

WHEREAS, based upon their investigation and pretrial discovery as set forth above, the Class Representatives and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate, and are in their best interests, and the Class Representatives have agreed to settle the claims raised in the Actions pursuant to the terms and provisions of this Agreement, after considering (a) the substantial benefits that Class Members will receive from a settlement of the Actions, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the Settlement of this litigation to be consummated as provided by the terms of this Agreement.

WHEREAS, it is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1. Definitions

    As used in this Settlement Agreement, the following terms shall have the meanings indicated:

1.1 "Actions" means the Actions captioned as *Schneider and Breneman v. Union Hospital, Inc.*, Case No. 2:15-cv-00204-JMS-DKL, and *Geraci v. Union Hospital, Inc.*, Case No. 2:16-cv-00207-JMS-DKL (S.D. Ind.), both in the United States District Court for the Southern District of Indiana.

1.2 "Administrative Expenses" means all of the expenses incurred in the administration of this Settlement and Plan of Allocation, including, without limitation, all expenses or costs associated with providing notice to the Class, locating Class Members, determining the eligibility of any person to be a Class Member, and administering, calculating and distributing the Net Settlement Fund to Class Members. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement. The Settlement Administrator shall be required to agree to a reasonable not-to-exceed cap for all fees and expenses for claims allocation and administration work.

1.3 "Agreement" or "Settlement Agreement" means this Settlement Agreement.

1.4 "Class" means any of the following:

    a. *Schneider* Rule 23 Rounding Class: Hourly paid employees from Union Hospital, Inc. who presently work there or voluntarily terminated their employment, who worked at any time from July 6, 2013 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid regular wages on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

    b. *Geraci* Rule 23 Rounding Class: Hourly paid employees from Union Hospital, Inc. who presently work there or voluntarily terminated their employment, who worked at any time from June 10, 2014 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid regular wages on one or more occasion for time worked due to Union Hospital's non-neutral time rounding of their mid-shift breaks and/or treatment of one or more mid-shift breaks of twenty minutes or less as unpaid time.

    c. *Schneider* FLSA Collective Action Class Members: Present and former hourly paid Union Hospital employees who worked at any time from July 6, 2013 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid overtime compensation on one or more occasion for time worked due to Union Hospital's non-neutral time rounding.

    d. *Geraci* FLSA Collective Action Class Members: Present and former hourly paid Union Hospital employees who worked at any time from June

3

    10, 2014 through October 24, 2015 and who, as shown by Union Hospital's time and pay roll records, were not timely paid overtime compensation on one or more occasion for time worked due to Union Hospital's non-neutral time rounding of their meal break or lunch period and/or treatment of one or more lunch breaks of twenty minutes or less as unpaid time. The lookback period for any FLSA claim that a Plaintiff may have is determined by the Plaintiff's opt in date, not the date the lawsuit was filed. Defendant reserves the right to object to any contention otherwise.

1.5 "Class Counsel" means Robert Kondras of Hunt Hassler Kondras & Miller LLP.

1.6 "Class Member" means Amy L. Schneider, Janet E. Breneman, Sarah J. Geraci and any person who is a member of one or more "Class" as defined above.

1.7 "Class Representatives" means Amy L. Schneider, Janet E. Breneman and Sarah J. Geraci.

1.8 "Class Representatives' Case Contribution Compensation" means compensation approved by the Court, in an amount not to exceed $25,000.00, which shall be paid from the Settlement Fund to each Class Representative pursuant to Section 7.2 and according to the "Plan of Allocation" in recognition of his or her contributions to the litigation and for reimbursement of his or her expenses, if any, if approved by the Court.

1.9 "Complaint" means the (a) First Amended Class Action and FLSA Collective Action Complaint filed on October 5, 2015 (See *Schneider* Docket Entry 66), and (b) Class Action and FLSA Collective Action Complaint filed on June 10, 2016 (See *Geraci* Docket Entry 1).

1.10 "Court" means the United States District Court for the Southern District of Indiana.

1.11 "Defendant" means Union Hospital, Inc.

1.12 "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 10 hereof.

1.15 "Final Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy and reasonableness of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure and to determine whether to issue the Final Settlement Approval Order.

1.16 "Final" or "Finality," with respect to the Final Settlement Approval Order means: (1) if no appeal is filed, the first business day after the last date on which any appeal from the Final Settlement Approval Order can be timely filed or noticed under the corresponding rules of the applicable court or legislation for filing or noticing appeals; or (2) if there is an appeal from the Order, whether timely or untimely, the first business day after the later of the date on which (a) any appeal from the Final Settlement Approval Order is finally dismissed, (b) if the Final Settlement Approval

4

Order is affirmed, a petition for a writ of *certiorari* or other form of review is denied or the time for filing such a petition expires, or (c) if *certiorari* or other form of review is granted, final affirmance of the Final Settlement Approval Order following review pursuant to that grant is ordered. Any proceeding or order, or any appeal or petition for a writ of *certiorari* or other form of review pertaining solely to any application for attorneys' fees, costs or expenses shall not in any way delay or preclude the Final Settlement Approval Order from becoming Final.

1.17 "Final Settlement Approval Order" means an Order by the Court finally approving the Settlement and the terms of this Agreement, substantially in the form attached hereto as **Exhibit 1**, and an Order dismissing with prejudice Defendant and any claims against the Defendant, substantially in the form attached hereto as **Exhibit 2**.

1.18 "Gross Settlement Fund" means (1) the amount of the Settlement Amount and (2) any interest on or other income or gains earned while such amount is held by the Escrow Agent.

1.19 "Individual Initial Allocation Amount" means the portion of the Net Settlement Fund that the Settlement Administrator determines, pursuant to the terms of this Agreement and the Plan of Allocation, shall be allocated to each Class Member.

1.20 "Net Settlement Fund" has the meaning defined in Section 5.1 hereof.

1.21 "Notice" means the Notice of Proposed Settlement of Class Action, which is to be sent to Class Members substantially in the form attached hereto as **Exhibit 3**. For those eligible participants who must opt-in to the FLSA Collective Action in order to receive payment under the Settlement Agreement, "Notice" means the Notice of Proposed FLSA Collective Action Settlement, which is to be sent to those eligible to sign a Claim Form and opt-in to the FLSA Collective Action substantially in the form attached hereto as **Exhibit 4**.

1.22 "Party" or "Parties" means Amy L. Schneider, Janet E. Breneman, Sarah J. Geraci, the Class, and Union Hospital, Inc.

1.23 "Person" means an individual or legal entity or his, her or its respective successors or assigns.

1.24 "Plan of Allocation" means a plan of allocation of the Net Settlement Fund as proposed by Class Counsel and Defendant, as approved by the Court.

1.25 "Plaintiff" or "Plaintiffs" means Amy L. Schneider, Janet E. Breneman, Sarah J. Geraci, and the Class.

1.26 "Preliminary Settlement Approval Order" means an order by the Court preliminarily approving this Agreement, including the forms and procedure for providing notice to the Class, establishing a procedure for Class Members to follow in order to object to the Settlement set forth in this Agreement, for approving the Plan of Allocation, and for setting a date for a hearing for final Settlement approval, substantially in the form

attached as **Exhibit 5**.

1.27   "Qualified Settlement Fund" means a qualified settlement fund (or QSF) established by the Settlement Administrator pursuant to Section 468B of the Internal Revenue Code and Treasury regulations.

1.28   "Released Claim" means any claim (including any Unknown Claim), liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description, that Amy L. Schneider, Janet E. Breneman, Sarah J. Geraci, the Class, and/or the Plaintiffs have, had, or may have against the Released Parties related to wage and hour claims under state or federal law relating to their employment or the provision of services with, to or for Defendant, including without limitation, denial of meal periods and rest breaks, failure to provide or keep records of hours worked, failure to provide itemized wage statements, the failure to pay wages, back wages, overtime, minimum wages, interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under federal, state or local wage and hour laws due to any of the foregoing, including, but not limited to the Indiana Wage Payment Statute, Indiana Wage Claims Act, or Fair Labor Standards Act that exist as of the date the Class Representatives execute this Agreement. "Released Claim" does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

Amy L. Schneider, Janet E. Breneman, and Sarah J. Geraci will be required to provide a broader release of claims by way of a separate release and waiver agreement. Thus, their individually released claims will exceed the scope of "Released Claim" as defined in this section.

1.29   "Released Parties" means Union Hospital, Inc., and each of its past, present, and future successors, predecessors, parents, related organizations, subsidiaries, divisions, departments, or affiliates, and any of their past, present, and future officers, directors, stockholders, partners, agents, attorneys, servants, subrogees, insurers, employees, representatives, assigns, consultants, principals, and advisors.

1.30   "Remaining Settlement Fund" means any portion of the Gross Settlement Fund not paid out in accordance with this Settlement Agreement.

1.31   "Settlement" means the settlement of the Actions by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.32   "Settlement Administrator" means a third-party administrator tasked with mailing Notice, ensuring that the Net Settlement Fund is distributed to Class Members in accordance with the Court-approved Plan of Allocation, and performing related class administrator activities. The Parties have agreed to use Dahl Administration as the Settlement Administrator.

1.33 "Settlement Amount" means Two and One Half Million Dollars ($2,500,000.00) that Defendant shall pay into the QSF pursuant to the terms of this Agreement.

1.34 "Taxes" means all state and federal income and wage taxes, including but not limited to employer payroll taxes including but not limited to FICA, FUTA, and SUTA obligations.

1.35 "Unknown Claims" means any and all Released Claims that any of the Plaintiffs does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her or it, might have affected his, her or its decisions with respect to the Settlement.

2. Agreement for Settlement Purposes Only

2.1 This Agreement is for settlement purposes only, and to the fullest extent permitted by law, neither the fact of, nor any provision contained in this Agreement, nor any actions taken hereunder, shall constitute, be construed as, be used as, or be admissible in evidence as, an admission of the validity of any claim or any fact alleged by Plaintiffs in the Actions or in any other pending or subsequently filed action, or as an admission of any wrongdoing, fault, violation of laws, or liability of any kind on the part of Defendants, or admission by any of the Parties of the validity, or lack thereof, of any claim, allegation or defense asserted in this action or any other action.

3. Representations

3.1 Each Party represents that (i) such Party has full legal right, power and authority to enter into and perform this Agreement, subject to Court approval, (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party, (iii) this Agreement constitutes a valid, binding and enforceable agreement, and (iv) such Party has not assigned any of the claims referred to herein to any other person or entity, and no consent or approval of any other person or entity is necessary for such Party to enter into this Agreement.

4. Settlement Consideration

4.1 In consideration for the release and discharge provided herein, the Defendant shall pay the Settlement Amount into the QSF.

4.2 The Defendant shall deposit the Settlement Amount into the QSF within 30 calendar days after this Settlement becomes Final. Defendant shall have no obligation to pay any amount other than the Settlement Amount in connection with this Settlement, including but not limited to Plaintiffs' attorneys' fees and expenses, Taxes, Administrative Expenses, claim expenses, notice expenses, mailing or postage, and the like.

5. Settlement Fund Investment and Taxes

    5.1    The Gross Settlement Fund shall be used to pay (i) the Notice, Publication Notice and other Administrative Expenses referred to in Section 1.2 hereof; and (ii) the attorneys' fee and expense award and the Class Representatives' Case Contribution Compensation referred to in Sections 7.1 and 7.2 hereof; and (iii) any Taxes that would result from this settlement. The balance of the Gross Settlement Fund (inclusive of interest earned) after the matters described in clauses (i), (ii) and (iii) of this paragraph and after the payment of any Taxes (as defined herein), if any, shall be the Net Settlement Fund. All funds held by the Settlement Administrator shall be deemed to be in the custody of the Court until such time as the funds shall be distributed to the Class Members or otherwise disbursed pursuant to the Plan of Allocation to be proposed by Class Counsel, the Defendant, and approved by the Court, and/or further order of the Court. No distributions shall be made from the Net Settlement Fund except in compliance with the provisions of Section 9 hereof and the Plan of Allocation, as approved by the Court.

    5.2    No amounts may be withdrawn from the QSF unless (a) expressly authorized by the Plan of Allocation or (b) approved by the Court.

    5.3    The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to the Plan of Allocation or derived from or made pursuant to the Settlement Fund.

    5.4    Each Class Representative and Class Member shall be solely responsible for the federal, state and local tax consequences to him, her or it of the receipt of funds from the Net Settlement Fund pursuant to the Plan Allocation and, if applicable, the Class Representatives' Case Contribution Compensation.

    5.5    The Defendant (including Released Parties) and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii) the formulation, design or terms of the Plan of Allocation (other than being notified in advance as to the details of the Plan of Allocation); (iv) the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns. If a lawsuit should arise based on numerals (i) through (vi) above, the Settlement Administrator or other individual as the case may be, may be required to indemnify and hold harmless the Defendant and any Released

Parties for any such claims asserted against the Defendant or Released Parties.

5.6 The Class Representatives and Class Counsel shall not have any responsibility for or liability whatsoever with respect to: (i) any act, omission or determination of the Settlement Administrator or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii) the formulation, design or terms of the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims asserted against the Gross Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.

6. Class Notice and Settlement Hearing

6.1 Class Counsel shall apply to the Court for entry of a Preliminary Settlement Approval Order, substantially in the form annexed hereto as **Exhibit 5**. Such Order shall include approval for the mailing of a Notice and Publication Notice, substantially in the form of **Exhibits 3** and **4** attached hereto.

6.2 The mailing of the Notice shall not occur until after the Court enters the Preliminary Settlement Approval Order.

6.3 The Settlement Administrator is responsible for mailing of the Notice.

6.4 The Settlement Administrator is responsible for contacting all Class Members. Defendant has no responsibility or liability relating to the identification of Class Members. Defendant and Released Parties may be indemnified and held harmless by the Settlement Administrator from all claims against Defendant or Released Parties relating to contact of or identification of all Class Members. Any and all information, including Social Security Numbers, provided by Defendant to effectuate any notice to the Class shall be held in confidence and shall be used solely for purposes of effectuating this Settlement Agreement. The Settlement Administrator shall destroy its copy of the Plaintiffs' information after the Settlement Agreement is fully effectuated.

6.5 Class Members shall have 60 calendar days after the mailing of the Notice to file objections to the Settlement with the Court.

6.6 Class Counsel shall request that, after Class Notice is given, the Court hold a hearing and enter a Final Settlement Approval Order for the litigation.

6.7 Defendant will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

7. Attorneys' Fees and Expenses

    7.1    Class Counsel will apply to the Court for an award of attorneys' fees, not to exceed one-third (33 1/3%) of the Gross Settlement Fund, and reimbursement of expenses payable from the Gross Settlement Fund and shall further provide to the Court, all necessary information required by the Court concerning the total award of attorneys' fees and reimbursement of expenses. Such application shall be made prior to the deadline for objections to the Settlement and in accordance with such schedule as the Court may establish. Defendant reserves the right to object to any applications for attorneys' fees or expenses exceeding $821,314.38 or Class Representative Case Contribution Compensation on a case-by-case basis.

        i.    The request for fees and costs is not part of this Settlement Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement Agreement. The outcome of any proceeding relating to the application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on approval of the Settlement Agreement.

    7.2    Class Counsel may also apply to the Court for Class Representatives' Case Contribution Compensation for Class Representatives in an amount not to exceed $25,000.00 per Class Representative.

    7.3    Upon or after the Effective Date, any attorneys' fees and expenses and Class Representatives' Case Contribution Compensation approved by the Court shall be paid from the Gross Settlement Fund.

9. Supervision and Distribution of Settlement Fund

    9.1    Subject to such supervision and direction of the Court and/or Settlement Administrator as may be necessary or as circumstances may require, the Settlement Administrator shall administer and/or oversee allocation of the Net Settlement Fund to the Class Members.

    9.2    The Gross Settlement Fund shall be applied as follows:

        (a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing Notice to the Class (including mailing of Notice and publication of Publication Notice), locating Class Members, determining the eligibility of any person to be a Class Member, administering, calculating and distributing the Net Settlement Fund to Class Members;

        (b)    to pay the attorneys' fees and expenses awarded to Class Counsel by the Court, and to pay Class Representatives' Case Contribution Compensation as approved by the Court;

    (c)    to pay the Taxes, if any; and

    (d)    to distribute the Net Settlement Fund to Class Members in accordance with the terms of the Plan of Allocation as approved by the Court and the Court's orders.

9.3    Upon the Effective Date and thereafter, and in accordance with the terms of the Plan of Allocation as approved by the Court or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members, subject to and in accordance with this Agreement.

9.4    Class Counsel shall prepare a Plan of Allocation to be presented to the Court with its application for entry of the Preliminary Settlement Approval Order.

9.5    The Settlement Administrator is responsible for ensuring that the Net Settlement Fund is distributed to Class Members in accordance with the Court-approved Plan of Allocation. The Settlement Administrator is also responsible for communicating with Class Members and others regarding Individual Initial Allocation Amounts and amounts paid under the Settlement. Defendant and the Released Parties have no responsibility or liability relating to the allocation of the Net Settlement Fund among Class Members and shall have no obligation to communicate with Class Members and others regarding Individual Initial Allocation Amounts and amounts paid under the Settlement. Defendant and Released Parties shall be indemnified and held harmless by Class Counsel and/or the Settlement Administrator from all claims against Defendant or Released Parties relating to Net Settlement Fund distribution.

9.6    No person shall have any claim against Class Counsel or the Class Representatives based on distributions made substantially in accordance with the Court-approved Plan of Allocation or further order(s) of the Court. No person shall have any claim whatsoever against Defendant or Defendants' counsel, arising from or related to any allocations or calculations thereof to any Class Member or distributions made, or not made, from the Gross or Net Settlement Fund.

9.7    If any Class Member fails to cash a settlement check within 120 calendar days of mailing, the Settlement Administrator shall stop payment or decline to honor the check (and this limitation will be printed on the face of the check), and the Settlement Administrator and Defendant shall be released from any obligation to pay any such amount to such Class Member. The amounts represented by uncashed checks, and any amounts deposited in the Settlement Fund subject to challenge as to which a final determination of invalidity is made, shall be then returned promptly by the Settlement Administrator to the Union Hospital Foundation, Inc., together with interest earned on funds deposited with the Settlement Administrator, pursuant to this Agreement.

>   (This transfer of funds to the Union Hospital Foundation will function as a *Cy Pres* award.)

10. Effective Date of the Settlement

    10.1 The Effective Date of the Settlement shall be the date on which all of the following conditions of settlement shall have occurred:

    (a) entry by the Court of the Preliminary Settlement Approval Order, substantially in the form attached as **Exhibit 5**;

    (b) approval by the Court of the Settlement, following Notice, substantially in the form attached as **Exhibits 3 and 4**, to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure and the FLSA; and

    (d) entry by the Court of the Final Settlement Approval Order substantially in the form attached as **Exhibits 1 and 2** and such Order becoming Final.

    (e) payment of the Settlement Amount into the QSF.

    10.2 Unless otherwise ordered by the Court, in the event this Agreement shall terminate, be cancelled or not become effective for any reason, within ten (10) calendar days after written notification of such event is sent by counsel for Defendants to the Settlement Administrator, the Settlement Administrator shall pay to Defendants an amount equal to the Settlement Amount together with any interest or other income earned thereon, less any Taxes paid or due with respect to such income, less any amounts required to be paid to the Settlement Administrator pursuant to the relevant Settlement Administrator Agreement, and less any reasonable Administrative Expenses actually incurred and paid or payable from the Gross Settlement Fund, as authorized in this Agreement.

    10.3 Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Actions immediately prior to the execution of this Agreement and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related Orders had not been entered.

11. Termination of this Settlement Agreement

    11.1 This Agreement is contingent on the final certification of the Settlement Class and the finality of the Order as set forth above.

    11.2 The Parties shall have the right to terminate this Agreement, in their sole discretion and without further obligations, if any of the following events occur:

    (a) Twenty percent (20%) or more of the Rule 23 Classes described above in Section 1.4 opt out of either class. Defendant shall have the right to terminate this Agreement, in its sole discretion, making it null and void and preventing it from becoming Final.

    (b) The Court fails to approve this Agreement as written, or if on appeal, the Court's approval is reversed or modified;

    (c) If any of objections to this Agreement are sustained; or

    (d) If there are any material modifications to this Agreement (other than the correction of typographical errors) by the U.S. District Court for the Southern District of Indiana, the U.S. Court of Appeals for the Seventh Circuit, or the Supreme Court of the United States.

## 12. Release

**12.1** As of the Effective Date of the Settlement, Plaintiffs will absolutely and unconditionally release and discharge any and all Released Claims against any and all Released Parties, but such release shall become null and void if the Settlement does not become Final for any reason.

**12.2** The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts, and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief and knowledge and that each Party does not rely on inducements, promises or representations made by anyone other than those embodied herein.

**12.3** Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

**12.4** As of the Effective Date of the Settlement, Defendant will absolutely and unconditionally release and discharge each of the Class Representatives and their counsel and each of their experts from any and all claims and all liabilities of any kind (including any and all attorneys' fees and other costs incurred in defending against such claims), relating to the institution and prosecution and settlement of the Actions and any claims made therein, but such release shall become null and void if the Settlement does not become Final for any reason. This release does not include all claims, rights or causes

of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

12.5 As of the Effective Date of the Settlement, Class Representatives and their counsel will absolutely and unconditionally release and discharge each of the Released Parties and their counsel and each of their experts from any and all claims and all liabilities of any kind (including any and all attorneys' fees and other costs incurred in defending against such claims), relating to the institution and prosecution and settlement of the Actions and any claims made therein, but such release shall become null and void if the Settlement does not become Final for any reason. This release does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of this Agreement or orders or judgments issued by the courts in connection with the Settlement.

13. No Admission of Wrongdoing

13.1 This Agreement, whether or not consummated, and any proceedings taken pursuant to it:

(a) shall not be offered or received against any Defendant or Released Party as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant or Released Party with respect to the truth of any fact alleged by any Plaintiff or the validity of any claim that has been or could have been asserted in the Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Actions or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of any Defendant or Released Party;

(b) shall not be offered or received against any Defendant or Released Party as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant or Released Party;

(c) shall not be offered or received against any Defendant or Released Party as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against any Defendant or Released Party, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder; and

  (d) shall not be construed against any Defendant or Released Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial.

14. Confidentiality

 14.1 The Class Representatives and Class Counsel agree that the terms of this Settlement, including the specific amounts each Plaintiff is entitled to receive under this Settlement, shall be kept confidential and shall not be disclosed to any third party at any time, except to the counsel, spouse, and accountant of the Class Representatives, as necessary. Furthermore, the Parties may seek leave of Court to file this Settlement Agreement under seal. Notwithstanding the foregoing, this Settlement Agreement may be filed publicly if necessary to obtain Court approval of the Settlement or if otherwise required by process of law. The Class Representatives and Class Counsel further agree not to disclose to the press or other members of the media facts regarding the underlying dispute or the existence or terms of this settlement, other than by stating the matter has been resolved to the mutual satisfaction of the parties.

 14.2 The Parties acknowledge that Class Counsel may mention this settlement in future court proceedings for future clients (e.g., in a motion to certify a class action, a motion to approve a settlement, a motion to approve attorney's fees). However, Class Counsel shall not mention this settlement or the underlying cases in any paper or electronic advertisement, any internet website, or the like.

15. Miscellaneous Provisions

 15.1 <u>Further Steps & Extensions of Time.</u>  The Parties agree that they each shall undertake any required steps to effectuate the purposes and intent of this Agreement. The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval as to Court dates.

 15.2 <u>Representation by Counsel.</u>  The Class Representatives and Defendant represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

 15.3 <u>Contractual Agreement.</u>  The Parties understand and agree that all terms of this Agreement are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

15.4 <u>Integration.</u> Other than the separate, broader release agreements to be entered into by the Class Representatives and Union Hospital, this Agreement constitutes the entire agreement among the Parties, and no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement.

15.5 <u>Incorporation by Reference</u>. All of the exhibits attached hereto are incorporated by reference as though fully set forth herein.

15.6 <u>Drafting.</u> The Parties agree that no single Party shall be deemed to have drafted this Settlement Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys.

15.7 <u>Modification or Amendment.</u> This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties and Persons who executed this Agreement or their successors-in-interest, subject to any required Court approval.

15.8 <u>Waiver.</u> The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

15.9 <u>Severability.</u> Should any part, term or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the court may modify such provision to the extent necessary to make it valid, legal and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

15.10 <u>Successors.</u> This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

15.11 <u>Survival.</u> The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement unless this Agreement should not become Final or Effective.

15.12 <u>Governing Law.</u> All terms and conditions of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Indiana, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

15.13 <u>Interpretation.</u>

      (a)    Definitions apply to the singular and plural forms of each term defined.

      (b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

      (c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

15.14    <u>No Precedential Value.</u>  The Parties agree and acknowledge that this Agreement carries no precedential value.

15.15    <u>Fair and Reasonable Compromise.</u>  The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of extensive arms-length negotiations.

15.16    <u>Retention of Jurisdiction.</u>  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

15.17    <u>Headings.</u> Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

15.18    <u>Exhibits.</u>  The Exhibits to this Agreement are expressly incorporated and made part of the terms and conditions set forth herein.

15.19    <u>Counterparts.</u> This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

15.20    <u>Facsimile and Electronic Mail.</u>  Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

15.21    <u>No Assignment.</u>  Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any claims, causes of action or demands which were or could have been, or ever could be asserted against any Party and that are released in this Agreement, or which were, could have been, or ever could be asserted against any Party. Any Party that breaches the representations and warranties set forth in this Paragraph shall indemnify and hold harmless each other Party, its parents, subsidiaries and affiliates, and their respective agents,

attorneys, successors, heirs, assigns, administrators, officers, directors, employees and all other persons acting in concert with them from any and every claim or demand of every kind or character arising out of a breach by any such breaching Party of its representations and warranties in this Paragraph.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or their duly authorized representatives:

UNION HOSPITAL, INC.

By: _____

UNION HOSPITAL, INC.

By: _____
Dana E. Stutzman or Nicholas S. Johnston, Attorneys for Defendant

AMY L. SCHNEIDER, ON BEHALF OF HERSELF AND THE CLASS

By: _____
Amy L. Schneider

JANET E. BRENEMAN, ON BEHALF OF HERSELF AND THE CLASS

By: _____
Janet E. Breneman

SARAH J. GERACI, ON BEHALF OF HERSELF AND THE CLASS

By: _____
Sarah J. Geraci

CLASS COUNSEL, ON BEHALF OF THE CLASS

By: _____
Robert P. Kondras Jr., Class Counsel

18

2290512v.5

attorneys, successors, heirs, assigns, administrators, officers, directors, employees and all other persons acting in concert with them from any and every claim or demand of every kind or character arising out of a breach by any such breaching Party of its representations and warranties in this Paragraph.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or their duly authorized representatives:

UNION HOSPITAL, INC.

By:_____

UNION HOSPITAL, INC.

By:_____
Dana E. Stutzman or Nicholas S. Johnston, Attorneys for Defendant

AMY L. SCHNEIDER, ON BEHALF OF HERSELF AND THE CLASS

By:_____
Amy L. Schneider

JANET E. BRENEMAN, ON BEHALF OF HERSELF AND THE CLASS

By:_____
Janet E. Breneman

SARAH J. GERACI, ON BEHALF OF HERSELF AND THE CLASS

By:_____
Sarah J. Geraci

CLASS COUNSEL, ON BEHALF OF THE CLASS

By:_____
Robert P. Kondras Jr., Class Counsel

18

2290512v.5